COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



IN THE MATTER OF M.A.S.,                     §

A JUVENILE.                                  §          No. 08-13-00085-CV

                                             §

                                                        Appeal from the

                                             §

                                                        65th District Court

                                             §

                                                        of El Paso County, Texas

                                             §

                                                        (TC#07,00821)

                                             §

# **O P I N I O N**

M.A.S., a juvenile, appeals the juvenile court referee's order of commitment to the Texas Juvenile Justice Department (TJJD).   For the reasons that follow, we affirm.

## **BACKGROUND**

On December 1, 2011, M.A.S. was adjudicated for committing the offense of injury to a child, a state jail felony.   *See* TEX. PENAL CODE ANN. § 22.04 (West 2011).   In July 2012, M.A.S. was placed on supervised probation under the terms and conditions of intensive supervised probation.   In October 2012, the juvenile court sustained the State's motion to modify M.A.S.'s supervised probation.   In December 2012, M.A.S. was placed on out-of-home placement at New Life Treatment Center (RTC).   In February 2013, the State filed a motion to modify the prior disposition, alleging that M.A.S. violated the terms and conditions of her supervised probation because she was "discharged unsuccessfully from the [RTC]."   The court sustained the State's

motion and set a disposition hearing.

At the hearing on the State's motion to modify, the court heard testimony regarding M.A.S.'s history with respect to probation. Jennifer Parada, M.A.S.'s probation officer, testified that M.A.S. had prior adjudications. During M.A.S.'s current probation, M.A.S. was placed on intensive supervised probation on three occasions. Parada reported that M.A.S. was placed in residential care at RTC on February 1, 2013, but was unsuccessfully discharged after 41 days due to M.A.S.'s ongoing negative behavior.

Parada testified that prior to living in RTC, M.A.S. lived with her grandmother who had been M.A.S.'s caretaker from a very young age due to M.A.S.'s mother's severe drug use.[1] According to Parada, M.A.S. has a lot of issues at home including family discord which results from M.A.S.'s failure to listen to her grandmother's directives. Parada indicated the grandmother was not in agreement with Parada's recommendation that M.A.S. be placed in the TJJD. Parada did not believe the grandmother was able to properly supervise M.A.S. Parada reported that M.A.S. had informed her that other family friends or people who had acted in a mentoring-type role to M.A.S. might be willing to have M.A.S. placed in their homes. Parada did not follow up with any of those individuals. Parada felt that placement in the TJJD was the appropriate sentence for M.A.S.

Parada also testified about M.A.S.'s treatment needs. According to Parada, M.A.S. would benefit from a behavioral modification-type program that would assess M.A.S's behavior and restrain her when dealing with issues that could put M.A.S. and others in danger. It was also necessary for M.A.S. to continue her medication regimen and take anger management courses. Parada believed M.A.S.'s needs could be adequately addressed by the TJJD.

---

[1] M.A.S.'s father is deceased.

Parada felt that the protection of the public and the rehabilitation and protection of M.A.S. required that a disposition be made. Parada also provided testimony concerning the efforts that she or the El Paso County Juvenile Probation Department (the Department) made to rehabilitate M.A.S. When asked whether she felt she had exhausted all the options available at this point, Parada responded that M.A.S. had been provided with every service of the Department. Parada felt the only option left was to place M.A.S. in the care, custody, and control of the TJJD. On cross-examination, Parada testified that the Department placed M.A.S. in several services, but did not try placing M.A.S. in Lee Moor or any foster home.

M.A.S.'s modification-disposition report, the RTC discharge summary, and the TJJD eligibility letter were also admitted into evidence at the hearing. The modification-disposition report provided a summary of M.A.S.'s probation history. The report also showed that M.A.S. acquired numerous incident reports while at RTC including, "Requesting Extra Food/Self Harm, Possessing Contraband: Tongue Ring, Contraband: Scissors (verbal threats to harm a staff member), Attempted Assault of Peer/Inciting Peer/Use of Foul Language, Evading Staff Supervision, Verbal Aggression, Inciting Peer, and Destruction of Property." The report also reflected that despite the RTC staff's efforts to assist M.A.S., M.A.S.'s behavior did not improve. While at RTC, M.A.S. attended a charter school where she accumulated 21 discipline referrals for the following behaviors: "disrespecting teacher, leaving class without permission, disrespecting teachers . . . use of foul language, refusal to participate in class, not complying with uniform, threatening to attack staff and refusal to attend school."

The RTC discharge summary indicates M.A.S. was discharged unsuccessfully from RTC because "[s]he . . . set up a threatening environment for the other girls . . . ." The summary

describes in part, that M.A.S. tried to assault a younger peer, was combative and continued to incite and threaten peers and staff on January 7, 2013, and was restrained at school on two separate occasions for displaying threatening conduct towards others.

At the modification-disposition hearing, M.A.S.'s grandmother expressed that she wanted the best for her kids and that she wanted to take M.A.S. home. M.A.S. also read a letter she wrote to the court in which she stated that her conduct was wrong, apologized for her actions, and noted that she had changed her behavior and worked harder. Letters from two of M.A.S.'s teachers at the Delta Academy reporting that an improvement in M.A.S.'s behavior and attitude had been observed since M.A.S.'s return to the Academy were also admitted into evidence.

At the end of the disposition hearing, the court made the required statutory findings that M.A.S. was in need of rehabilitation and that protection of the child and the public required that disposition be made. The court further found that (1) it was in M.A.S.'s best interest to be placed outside of her home, (2) reasonable efforts were made to prevent or eliminate the need for her removal from the home and to make it possible for her return, and that (2) M.A.S. could not be provided the quality of care and level of support and supervision that she needs to meet the condition of probation. Based on her findings, the court committed M.A.S. to the TJJD. This appeal followed.

## DISCUSSION

In her sole issue on appeal, M.A.S. contends the juvenile court abused its discretion by committing her to the TJJD.

### Standard of Review

A trial court's modification of disposition is governed by Section 54.05 of the Texas

4

Family Code. *See* TEX. FAM. CODE ANN. § 54.05 (West 2014). When a juvenile's prior disposition is based on a finding that the juvenile engaged in a felony offense, as here, the trial court may modify the disposition and commit the juvenile to TJJD if the court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court. *See* TEX. FAM. CODE ANN. § 54.05(f) (West 2014). A juvenile court that commits a child to TJJD is required to recite in its order a determination that: (1) it is in the child's best interests to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and (3) the child, in the child's home, cannot be provided the quality of care and the level of support and supervision that the child needs to meet the conditions of probation. *See* TEX. FAM. CODE ANN. § 54.05(m) (West 2014).

Juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children who have been found to have engaged in delinquent conduct, especially in hearings to modify disposition. *In re D.R.A.,* 47 S.W.3d 813, 815 (Tex.App. – Fort Worth 2001, no pet.). Consequently, we review an order committing a juvenile to the TJJD under an abuse of discretion standard. *See In re J.P.,* 136 S.W.3d 629, 632 (Tex. 2004). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *In re D.R.,* 193 S.W.3d 924, 924 (Tex.App. – Dallas 2006, no pet.).

No abuse of discretion occurs where a trial court bases its decisions on conflicting evidence. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex.App. – Fort Worth 2003, no pet.). Nor does an abuse of discretion occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Id.*

*Analysis*

M.A.S. argues the court abused its discretion by committing her to the TJJD because there were other community based alternatives available. In support of her argument, M.A.S. refers us to Parada's testimony indicating that Parada did not follow up on the names of family friends who might have been willing to place M.A.S. in their homes and that Parada did not consider placing M.A.S. in Lee Moor home or any foster home. However, as correctly noted by the State, a trial court is not required to exhaust all possible alternatives before committing a juvenile to the TJJD. *In re J.A.M.*, No. 04-07-00489-CV, 2008 WL 723327, at *2 (Tex.App. – San Antonio Mar. 19, 2008, no. pet.) (mem. op.) (citing *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex.App. – Texarkana 2007, no pet.)). Additionally, pursuant to the Texas Family Code, a trial court is permitted to decline third and fourth chances to a juvenile who has abused a second chance. *In re J.P.*, 136 S.W.3d at 633.

M.A.S. also contends the court abused its discretion because there was no evidence the community needed to be protected from M.A.S. and M.A.S. is not the type of serious offender that requires confinement in the TJJD. The record shows M.A.S. was adjudicated for the offense of injury to a child. The State also introduced evidence that M.A.S. was violent and aggressive with others.

The RTC discharge summary reports that M.A.S. has a history of physical aggression. The summary reflects M.A.S. acquired "10 Serious Incident Reports" during her admission at RTC. M.A.S. was unsuccessfully discharged from RTC because she "set up a threatening environment for the other girls . . . ." The modification-disposition report similarly reflects that M.A.S. had a history of violent and aggressive behavior. While in school at RTC, M.A.S.

6

accumulated 21 discipline referrals which included threats to attack staff. The report also indicates that M.A.S. has had seven referrals to the Department, two prior adjudications, and that her supervised probation had previously been modified on two occasions. We further note that in her letter to the court, M.A.S. conceded that her behaviors and actions which included fighting, stealing, and disobeying her family were wrong. She further conceded that her behavior while in RTC was unacceptable. She also explained that while in RTC, she felt stressed out and picked on, and that she dealt with those feeling by fighting and being aggressive.

Parada testified that the Department had provided M.A.S. with every service they had available and that she felt the only option left was to commit M.A.S. to the care, custody, and control of the TJJD. The modification-disposition report lists the various services the Department provided to M.A.S. The court found that the Department exhausted all resources. Based on M.A.S.'s probation history, her continued inability to follow the terms and conditions of her probation, the inadequacies present in her home environment, and her ongoing violent and aggressive behavior which led to her unsuccessful discharge from RTC, the court could have reasonably concluded that the Department has exhausted all of its options and that the protection of the public and the juvenile required that disposition be made. The court did not act arbitrarily or without reference to guiding principles. Accordingly, we conclude the court did not abuse its discretion by committing M.A.S. to the TJJD. *In re J.P.*, 136 S.W.3d at 632. Issue One is overruled.

## CONCLUSION

The juvenile court's judgment is affirmed.

GUADALUPE RIVERA, Justice

7

June 25, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.