COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | No. 08-13-00148-CV |
| § | |
| § | Appeal from the |
| IN THE MATTER OF M.O., JR., A JUVENILE. § | 65th District Court |
| § | of El Paso County, Texas |
| § | (TC# 1100958) |
| § | |

## **O P I N I O N**

M.O., Jr. appeals from the juvenile court's order modifying his disposition and committing him to the Texas Juvenile Justice Department (TJJD).   We affirm.

## **BACKGROUND**

On August 29, 2011, M.O. was adjudicated for committing aggravated assault with a deadly weapon, a felony.   *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2), (b), 71.02(a). M.O.'s initial disposition in September 2011 placed him on probation in his mother's home under standard supervision at home and at school.   Subsequently, the State moved to modify the disposition, and in January 2012, M.O.'s disposition was modified to Intensive Supervised Probation (ISP) under the terms and conditions of the Serious Habitual Offender Comprehensive Action Program (SHOCAP).

In March 2013, the State moved a second time to modify M.O.'s disposition. The State alleged that M.O. had violated the terms and conditions of his supervised probation by: (1) committing arson and aggravated assault with a deadly weapon; (2) using, consuming, or possessing marijuana; (3) twice leaving electronic-monitoring premises without the court's permission; and (4) committing school-related infractions resulting in his suspension and expulsion from public school. M.O. entered into an agreed modification order committing him to TJJD. M.O. then filed a motion for new trial contending he had agreed to the disposition to TJJD by mistake, believing he had no other option and could not contest the disposition. The trial court granted M.O.'s motion and set a modification-disposition hearing for May 3, 2013.

At the modification-disposition hearing, the trial court admitted into evidence a modification-disposition report prepared by Juvenile Probation Department Officer Oscar Miranda. Miranda's report noted that from January 2012 to February 2013, M.O. had been charged with aggravated assault against a public servant, had committed arson at his public school, had used or possessed marijuana, had absconded from his home for several days, and had been suspended and then expelled from school. In February 2013, M.O. was placed in detention, and while there attempted to assault and twice assaulted other juveniles, flooded his room, and was caught in possession of a utensil he intended to make into a shank. The report indicated that in April 2013, the SHOCAP team, the "staffing committee," and the Chief Juvenile Probation Officer all unanimously recommended M.O. be committed to TJJD due to his referral history, his continued commission of serious felony offenses while on probation in the community, and because he constituted a danger to himself and others. The report noted M.O. had received psychological assessments, Emotional Regulation Group Counseling, and services from the El

2

Paso Emergence Health Network and MRT, from which he was discharged due to non-attendance. The report concluded and recommended that M.O. be committed to TJJD because despite being given the opportunity to correct his behavior through ISP under SHOCAP and being afforded counseling services in the community, M.O. continued to violate the terms of his probation by committing felony offenses, abusing drugs, failing to attend school, and leaving his home premises.[1]  TJJD was recommended not only for the safety of M.O. and the community, but also because TJJD would provide a secure, structured setting that would restrict M.O.'s interactions with negative peers and ensure he received educational services, vocational training, therapeutic services, and independent living skills.  The report noted that reasonable efforts had been made to avoid removing M.O. from his home, as he had been afforded community-based counseling services, community-based supervision through two intensive programs, and out-of-home placement in the local Challenge Academy program. The report stated that M.O's mother was the subject of on-going contempt hearings and concluded that M.O's home could not provide the level of support needed to complete probation as shown by M.O's continued disregard for the conditions of his probation.

The trial court also admitted into evidence a March 2013 Psychological Assessment Report prepared by clinical psychologist, Dr. Michael P. Hand.  Dr. Hand's report included diagnoses of childhood-onset conduct disorder, attention-deficit/hyperactivity disorder (hyperactive-impulsive type), learning disorder, and mild mental retardation.  Dr. Hand made no recommendation on M.O.'s placement, but rather recommended in part that the trial court consider M.O.'s low intellectual functioning and ADHD, and the limits those disabilities placed on M.O.'s judgment, impulse control, and susceptibility to influence by others.  He further recommended that

---

[1] M.O. was also determined to have a high risk to re-offend.

medications appropriate to M.O.'s treatment be continued, that M.O. receive special education, and that M.O. be given individual psychotherapy to assess his mood, behavior, coping skills, and self-concept. Juvenile Probation Department Officer Oscar Miranda was the only witness to testify at the hearing. On the whole, his testimony confirmed and elaborated on what was contained in his modification-disposition report. For instance, Miranda testified that after being placed on SHOCAP probation, M.O. had committed two felony offenses, including an unadjudicated charge of arson to which M.O. had admitted. M.O. also left his school campus, tested positive for marijuana, and absconded from home for four to five days. After being placed in detention on February 7, 2013, M.O. was involved in three assaults and twice flooded his room. Miranda testified that he presented M.O.'s case to the SHOCAP team, the "staffing committee," and the Chief Juvenile Probation Officer, all of whom recommended that M.O. be committed to TJJD.

Miranda noted that the Juvenile Probation Department had provided M.O. with standard supervision at home and at school, but opined that M.O.'s mother could not adequately supervise him. According to Miranda, TJJD was the only remaining option for providing any kind of help to M.O., both because M.O. needed the rehabilitation TJJD would provide and because the protection of the public required that disposition. Miranda testified that the Juvenile Probation Department offered M.O. counseling services through El Paso Emergence Health Network, MRT, and the Emotional Regulation Group Counseling, and that the Department had attempted and exhausted rehabilitation efforts to address the diagnoses noted in a prior psychology report prepared in January 2012.

On cross-examination, Miranda stated that he did not "staff" M.O. for any other programs

4

in January 2012, and did not think that M.O. would need a mental health program other than the programs to which M.O. had already been referred. Miranda acknowledged that SHOCAP is not a mental health program, and that MRT and the Emotional Regulation Counseling Group are standard SHOCAP programs for all gang-involved youth. Miranda explained that he was in the process of referring M.O. to the El Paso Mental Health Collaborative in 2012, but acknowledged that the Department had not modified its programs to address M.O.'s impulse control, low intellectual functioning, low vocabulary, low verbal comprehension, difficulty with information retention, or learning difficulties. Miranda testified that an El Paso Emergence caseworker had been working with M.O. to address the depressive features of M.O.'s conduct disorders but admitted the Department had not verified whether El Paso Emergence was addressing the issues identified in a January 2012 psychology report. Miranda admitted that M.O.'s anger issues continued after the Emotional Regulation Group Counseling and agreed that M.O.'s negative behaviors accelerated during his detention in February 2013. Miranda explained, however, that TJJD differs from the Department's local detention facilities because TJJD has an assessment center. He also stated that despite M.O.'s mental health issues and learning disabilities, when M.O. desires, he can perform well in school.

At the conclusion of the modification-disposition hearing, the trial court committed M.O. to TJJD. The trial court found that (1) it was in M.O.'s best interest to be placed outside his home; (2) reasonable efforts were made to prevent or eliminate the need for M.O.'s removal from the home and to make it possible for him to return to his home; and (3) M.O could not be provided the quality of care and level of support in his home necessary to meet the standards of his probation. In particular, the trial court found that reasonable efforts had been made to prevent M.O.'s removal

5

from his mother's home, including previously placing M.O. on probation, previously referring him to the Intensive Supervised Probation program under SHOCAP, previously referring him to counseling or psychological services with El Paso Emergence Health Network, Emotional Regulation Group, and MRT, and providing him psychological evaluations and assessments. The trial court also found that it was contrary to M.O.'s welfare to remain in his mother's home and in his best interest to be placed outside of his home, because M.O. had a history of running away, a history of aggression, had been on probation previously, and was a known gang member, and because his mother lacked sufficient skills to provide adequate supervision and had refused to cooperate with court orders. The court also found that M.O. needed to be held accountable for his delinquent behavior, that he posed a risk to the safety and protection of the community, that no community-based intermediate sanction was available to adequately address M.O.'s needs or to adequately protect the needs of the community, and that the gravity of the offense and M.O's prior juvenile record required he be confined to a secure facility.

## DISCUSSION

In his sole issue on appeal, M.O. contends the trial court abused its discretion when it committed him to TJJD because other community-based alternatives for addressing M.O.'s mental health issues had not been considered.

### *Standard of Review*

A trial court's modification of disposition is governed by Section 54.05 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.05. A juvenile court that modifies a prior disposition and commits a child to TJJD is required to recite in its order a determination that: (1) it is in the child's best interests to be placed outside the child's home; (2) reasonable efforts were

6

made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and (3) the child, in the child's home, cannot be provided the quality of care and the level of support and supervision that the child needs to meet the conditions of probation. *See* TEX. FAM. CODE ANN. § 54.05(m). Juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children who have been found to have engaged in delinquent conduct, especially in hearings to modify disposition. *In re M.A.S.,* 438 S.W.3d 803, 806 (Tex.App. – El Paso 2014, no pet.); *In re G.W.*, 396 S.W.3d 202, 204 (Tex.App. – El Paso 2013, no pet.). Therefore, we review the order committing M.O. to the TJJD under an abuse-of-discretion standard. *In re M.A.S.,* 438 S.W.3d at 806; *In re G.W.*, 396 S.W.3d at 204. A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *In re M.A.S.,* 438 S.W.3d at 806; *In re G.W.*, 396 S.W.3d at 204. A juvenile court does not abuse its discretion merely because it decides a matter differently than the appellate court would in a similar situation. *In re M.A.S.,* 438 S.W.3d at 806; *In re G.W.*, 396 S.W.3d at 204. No abuse of discretion occurs where a trial court bases its decisions on conflicting evidence. *In re M.A.S.,* 438 S.W.3d at 806; *In re G.W.*, 396 S.W.3d at 204. Nor does an abuse of discretion occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *In re M.A.S.,* 438 S.W.3d at 806; *In re G.W.*, 396 S.W.3d at 204; *see also In re A.T.M.*, 281 S.W.3d 67, 71 (Tex.App. – El Paso 2008, no pet.).

*Analysis*

M.O. contends the trial court abused its discretion when it committed him to TJJD because other community-based alternatives for addressing M.O.'s mental health issues had not been considered. In particular, M.O. argues that short of the commitment to TJJD, "they had never

7

before considered placing the Juvenile in an out-of-home facility," that there were alternatives that admittedly were not explored, and that the finding that "no community-based intermediate sanction is available to adequately address the needs of the juvenile" is not supported by the evidence.

First, we note that despite the trial court's finding, it was not required to determine that *no community-based intermediate sanction was available to adequately address M.O.s' needs*, before modifying M.O.'s disposition and committing him to TJJD.[2] The applicable standard is contained in section 54.05 of the Family Code, which governs modifications to dispositions. Under section 54.05 the trial court was required to determine, in pertinent part, that "reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home[.]" TEX. FAM. CODE ANN. § 54.05(m)(1)(B). Finding that "reasonable efforts were made" is a different and lesser standard from a determination that "no community-based intermediate sanction is available." The exhaustion of all possible alternatives to commitment is not required before a court modifies a disposition and commits a juvenile to TJJD. *In re M.A.S.*, 438 S.W.3d at 807; *In re J.R.C.,* 236 S.W.3d 870, 875 (Tex.App. – Texarkana 2007, no pet.). Nor is a court required to consider alternative dispositions in a modification hearing regarding a juvenile adjudicated delinquent based on conduct that would constitute a felony. *In re A.T.M.,* 281 S.W.3d at 72; *see* TEX. FAM. CODE ANN. § 54.05(f). Further, the trial court is permitted to decline third or fourth chances to a juvenile who has abused

---

[2] In making this finding, the trial court cites to "Section 54.04(f), Title Three, Family Code." But, section 54.04 governs initial dispositions, not the modification of a prior disposition, and subsection (f) does not require a finding that no community-based intermediate sanction is available. *See* TEX. FAM. CODE ANN. § 54.04(f) (requiring the court to "state specifically in the order its reasons for the disposition," to furnish a copy of the order to the child, and to include in the order any terms of probation). In fact, section 54.04(i) governing original dispositions requires the same findings when committing the child to TJJD as those required by section 54.05(m) for modifications of disposition. *Cf.* TEX. FAM. CODE ANN. § 54.04(i) with § 54.05(m).

8

a second chance. *In re M.A.S.*, 438 S.W.3d at 807. Rather, the trial court was required to find that reasonable efforts had been made to prevent removal from and to permit M.O. to remain in his home. *See* TEX. FAM. CODE ANN. § 54.05(m)(1)(B).

Here, M.O. was initially placed on probation in his home under standard supervision, but violated his probation. He was then given a second chance at probation when he agreed to a modification to Intensive Supervised Probation. But, M.O. failed his second chance at probation. From January 2012 to February 2013, M.O. was charged with aggravated assault against a public servant, committed arson at his public school, used or possessed marijuana, absconded from his home for several days, and was suspended and then expelled from school. In February 2013, after he was placed in detention, he attempted to assault and twice assaulted other juveniles, flooded his room, and was caught in possession of a utensil he intended to make into a shank. Based on this behavior, the SHOCAP team, the "staffing committee," and the Chief Juvenile Probation Officer all recommended that M.O. be committed to TJJD. And, Miranda testified that based on his experience, TJJD was the only remaining option for providing any kind of help to M.O., both because M.O. needed the rehabilitation that could be provided at TJJD and because the protection of the public required that disposition. Thus, there was some evidence to support the trial court's determination that reasonable efforts had been made to prevent M.O.'s removal from his home and to support the trial court's decision to commit M.O. to TJJD.

Because some evidence of substantive and probative character exists to support the trial court's decision to commit M.O. to TJJD, we are unable to conclude the trial court acted arbitrarily or unreasonably. *See In re M.A.S.,* 438 S.W.3d at 806; *In re A.T.M.,* 281 S.W.3d at 70. Because the trial court did not abuse its discretion in committing Appellant to TJJD, Appellant's issue on

9

appeal is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


                                    STEVEN L. HUGHES, Justice

December 3, 2014

Before McClure, C.J., Rodriguez, and Hughes, JJ.