

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00540-CV

**IN THE MATTER OF J.D.S.**

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2013JUV00420A
Honorable Laura Parker, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  June 15, 2016

AFFIRMED

J.D.S. appeals the trial court's order modifying his disposition and committing him to the custody of the Chief Juvenile Probation Officer for placement outside his home. We conclude that the trial court did not abuse its discretion, and we affirm the judgment.

### BACKGROUND

In April 2013, when J.D.S. was thirteen years old, the trial court found he engaged in delinquent conduct by committing the offense of burglary of a habitation. The court placed J.D.S. on probation for one year in the custody of his mother. Between December 2013 and April 2015, the court heard three motions to modify disposition, each of which resulted in an extension of the period of J.D.S.'s probation. In June 2015, the State filed its fourth motion to modify the disposition, alleging J.D.S. violated two conditions of his probation by failing to attend school

each day and follow school rules and by violating curfew. J.D.S. pled true to the alleged violations, and the trial court found J.D.S. violated the reasonable and lawful orders of the court.

The court then considered the appropriate disposition. The only evidence before the court was a packet of stipulated evidence, which included school attendance records and a chronology by J.D.S.'s probation officer, and the Bexar County Juvenile Probation Department's Pre-Disposition Report, both of which were admitted into evidence without objection.

The pre-disposition report states that J.D.S. has had a total of thirteen referrals with the Juvenile Probation Department. It reflects that J.D.S. was offered numerous services and programs and had his probation extended three times while being allowed to stay in his home. The report states that J.D.S. did not take advantage of many of the services and programs provided and that he continued to struggle with "his runaway behavior and his drug use."

J.D.S. lives with his mother and six siblings in his grandparents' home. J.D.S. reported that he began smoking marijuana at the age of eleven. During the time he was on probation he was offered intensive substance abuse counseling and voluntary inpatient treatment and was supervised by the Substance Abuse Unit. The report remarks that J.D.S. failed to complete treatment programs, was "misleading and dishonest about his drug use," fabricated stories to "get out of participating with treatment," and denies he has a problem. J.D.S. continued to test positive for THC throughout his probation, and when the third motion to modify was filed, the Department recommended J.D.S. be placed on probation outside his home. However, the trial court allowed J.D.S. to stay in his home. The court's April 2015 modification order extended J.D.S.'s probation and granted him an opportunity to complete the 386th District Court Post Adjudication Drug Court program. The Probation Department report states that J.D.S. "was able to remain clean" and was home for all "curfew checks" for about a month after beginning the program.

The April 20, 2015 modification order also required J.D.S. to re-enroll in school, attend school daily, and follow all school rules.[1]  However, J.D.S.'s mother did not re-enroll him in school until May 18.  The school reported that J.D.S. was absent without excuse on May 19, 20, and 21. The probation officer's chronology states that on May 19, the probation department attempted to visit J.D.S. at school.  The probation officer texted him and J.D.S. responded that he was sick and had not gone to school that day.  The probation officer attempted another school visit on May 21. He asked J.D.S. in a text where he was and J.D.S. responded that he was at school.  The probation officer told J.D.S. to come to the attendance office to speak to him, and J.D.S. responded that his mother had already picked him up from school.  Later that day, J.D.S.'s mother told the probation officer he had missed school that day because he was helping the family move.  At the disposition hearing, J.D.S.'s mother insisted J.D.S. had been at school each day.

The probation officer's chronology states that he visited J.D.S. at home on May 21 after determining he was not at school.  The pre-disposition report states that bullets were found in J.D.S.'s room and a picture of J.D.S. holding a handgun was found on his telephone.  The probation officer's chronology states he also found a text on J.D.S.'s telephone showing he was asking for a ride home at 2:11 a.m., long after curfew, and another text in which J.D.S. offered to "provide a dime bag" to another person.

According to the probation officer, when he began explaining to J.D.S. that he was going to be detained for violating his probation because he had not attended school, J.D.S. started yelling and ran out the back door of the house and jumped a fence.  The probation officer returned to the house after curfew that night and J.D.S.'s mother stated J.D.S. had not returned home.  His mother

---

[1] According to the pre-disposition report, J.D.S. had previously "been referred at school for gambling, fighting, theft, and classroom disruption."

insisted to the probation officer that J.D.S. did not miss curfew or school and was no longer involved with drugs, despite the evidence to the contrary.

J.D.S. did not have any further contact with the probation office until July 7, 2015, when he was found in a stolen car driven by his thirteen year old brother. J.D.S. tested positive for THC at that time.

The pre-disposition report states J.D.S. receives inadequate parental supervision and that his mother minimizes, denies, justifies, and excuses his behavior. Because of this and because J.D.S. continued to struggle with drug use and "runaway behavior" after having been provided numerous services and programs, the probation officer and the Juvenile Probation Department Staffing Committee recommended that J.D.S. "would benefit greatly from a residential program designed to provide additional supervision and support."

At the disposition hearing, J.D.S. asked the court to allow him to remain in his mother's home under intense supervision, stating that he is the only person helping his mother and that he is determined to stay off drugs and finish high school. His attorney argued "he is the best child that his mom has," and that J.D.S. ran because he did not want to go to detention and was afraid. The attorney stated J.D.S. was not out doing drugs, but was working for his grandfather, making money for his mother.

At the conclusion of the hearing, the trial court modified J.D.S.'s disposition by extending his probation until November 11, 2016, in the custody of the Chief Juvenile Probation Officer of Bexar County for placement outside the home. The court's order includes findings that it is in J.D.S.'s best interest to be placed outside the home and that, in his home, J.D.S. cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation. The court specifically found that while on probation in his home, J.D.S. had not been attending school, had continued his drug use, and had poor supervision. The court also found that

reasonable efforts had been made to prevent or eliminate the need for J.D.S.'s removal from the home and to make it possible for him to return home, and incorporated an exhibit listing the numerous services and programs that had been made available to J.D.S. while on probation. J.D.S. timely filed a notice of appeal.

## DISCUSSION

In his sole point of error, J.D.S. argues the trial court abused its discretion "because the record indicates that a continuation of probation at home would have been a more appropriate disposition."

The juvenile court may modify a disposition order that places the juvenile on probation if it "finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court." TEX. FAM. CODE ANN. § 54.05(f) (West Supp. 2015). The court may modify the disposition to place the child on probation outside the child's home if the court finds it is in the child's best interests, reasonable efforts have been made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home, and the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. *Id.* § 54.05(m)(1)(A)-(C). The trial court has broad discretion in determining a suitable disposition in a proceeding to modify a juvenile disposition. *In re E.D.*, 127 S.W.3d 860, 862–63 (Tex. App.—Austin 2004, no pet.). The trial court abuses its discretion if it acts arbitrarily or unreasonably, or without reference to guiding rules and principles. *In re J.M.D.D.L.C.*, 457 S.W.3d 205, 207 (Tex. App.—El Paso 2015, no pet). "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *see Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) ("[W]e will not hold that a trial court abused its discretion . . . if some evidence supports its decision."); *In re*

*M.A.S.*, 438 S.W.3d 803, 807 (Tex. App.—El Paso 2014, no pet.) (in reviewing juvenile court's modification of disposition, no "abuse of discretion occur[s] as long as some evidence of substantive and probative character exists to support the trial court's decision.").

The record before the trial court contained evidence that reasonable efforts were made to eliminate the need to remove J.D.S. from his home. J.D.S. was provided multiple opportunities to successfully complete probation while remaining in his home. The Juvenile Justice Code "allows a trial court to decline third and fourth chances to a juvenile who has abused a second one." *In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004). The record also contains evidence supporting the trial court's finding that J.D.S.'s parental supervision was inadequate to help him comply with the terms of his probation. The trial court is in the best position to determine a parent's ability to adequately supervise the juvenile. *In re J.M.D.D.L.C.*, 457 S.W.3d at 208; *see In re D.E.*, No. 04-12-00600-CV, 2013 WL 2645527, at *3 (Tex. App.—San Antonio June 12, 2013, no pet.) (mem. op.). The record supports the findings that J.D.S. is more likely to successfully complete his probation in a more structured and supervised environment and that it is in his best interest to be removed from his home. We conclude the trial court did not abuse its discretion by placing J.D.S. on probation outside his home.

Luz Elena D. Chapa, Justice