

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF B.E.E., | § | No. 08-21-00121-CV |
| A JUVENILE. | § | Appeal from the |
| | § | 65th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 1500872) |

**O P I N I O N**

B.E.E., a juvenile, appeals from the juvenile court's judgment committing him to the Texas Juvenile Justice Department (TJJD). *See* TEX. FAM. CODE ANN. § 54.04(i). On appeal, B.E.E. argues the evidence is insufficient to support the trial court's finding that a commitment to TJJD was in B.E.E.'s best interest. We affirm.

## I. BACKGROUND

### A. Procedural history

On February 25, 2021, B.E.E., then sixteen-years-old, was adjudicated as having engaged in delinquent conduct, namely, the offense of unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. § 31.07. In April 2021, the trial court entered a judgment placing B.E.E. on supervised probation until he reached his eighteenth birthday. Such probation included his removal from his mother's home and placement in the care, custody, and control of the Samuel F. Santana Challenge Academy (Challenge Academy), a physically oriented behavior modification program. Probation terms required B.E.E. to successfully complete the program. In June 2021, the State filed a motion

to modify disposition after discovering that B.E.E.'s diagnosed heart condition rendered him unable to enter and complete the Challenge Academy's program. The trial court later rendered an administrative modification order, determining that, through no fault of his own, B.E.E. was not able to undertake nor complete the terms and conditions of the last judgment of probation. As a result, the court sustained the State's motion to modify disposition and set the matter for a disposition hearing later that month.

## B. The hearing

### 1. *The testimony and evidence*

At the disposition-modification hearing held later that month, juvenile-probation officer Kenya Freddie testified regarding the juvenile probation department's (Department's) supervision of B.E.E. and its disposition recommendation. In advance of the hearing, Freddie obtained a psychiatric evaluation of B.E.E. and prepared a "modification-disposition" report and a "PACT" assessment[1], all of which were admitted into evidence.

Officer Freddie related B.E.E.'s history of adjudicated and non-adjudicated offenses, which history was also detailed in her disposition report—B.E.E. had been referred to the Department a total of nine times, and, including the instant offense, had been adjudicated for delinquent conduct five times, which adjudicated offenses included prohibited weapon (knuckles) in drug-free zone, possession of marijuana in an amount less-than two ounces, graffiti in a public monument or school, and theft of property over $100 but less than $750. Officer Freddie's report and testimony showed that although B.E.E. successfully completed two probation terms in 2016 and 2017, respectively, B.E.E. continued to engage in delinquent conduct despite successfully completing probation (and despite undergoing various rehabilitative programs while on intensive supervised probation), and that multiple detention periods did not deter him from repeatedly

---

[1] "PACT" is an acronym for "Positive Achievement Change Tool."

violating his terms of probation. B.E.E. had also received individual and family counseling, comprised of various therapy modalities, throughout his prior supervision by the Department. At the time of the hearing, Officer Freddie also disclosed that B.E.E. had a pending misdemeanor assault charge.

According to Officer Freddie, B.E.E. had a history of drug and alcohol abuse, including use of alcohol, marijuana, and hallucinogens. B.E.E.'s abuse of drugs began when he first used marijuana at age nine and continued as recently as February 2021, just prior to his detention for the instant felony; B.E.E. described his most recent drug and alcohol use as consisting of smoking two-to-three blunts per day, three times a week, and drinking alcoholic beverages two-to-three times a week. B.E.E. reportedly made his money selling drugs and stealing vehicles and was self-admittedly a member of the Sixth Street gang, which he signaled by donning gang-identifying tattoos on his neck and face.

B.E.E.'s mother, M.G.M., reported to Officer Freddie that, for the most part, B.E.E. gets along with her and his siblings. But she further explained that when he does not get his way, he leaves the house without permission to hang out with negative peers and gang members. B.E.E. himself admitted to Officer Freddie that he leaves his home for days at a time whenever he gets frustrated over his mother's refusal to let him go out or play video games.

Officer Freddie believed B.E.E.'s mother tried her best to enforce B.E.E.'s terms and conditions of probation and to address his mental, medical, and educational needs; she communicated well with the Department, reported B.E.E.'s probation violations, and attempted to keep B.E.E. from negative associations. Nonetheless, B.E.E. had a history of truancy and running away, resulting in him being held back a grade in school. From August through December 2020, when he was reported as a runaway, B.E.E. incurred a total of seventy-three unexcused class-period absences, which led to his expulsion from Bel Air High School. Thereafter, B.E.E.'s mother

unsuccessfully attempted to secure B.E.E.'s attendance at Jefferson High School, but she had to withdraw him from enrollment mere weeks later because B.E.E. again ran away. It was not until B.E.E.'s enrollment at the Delta Academy, following his detention for the instant offense, that B.E.E.'s attendance and grades improved. There, B.E.E. received support and a variety of services and he was now passing all but one class.

Officer Freddie's modification-disposition report indicated B.E.E.'s intelligence was assessed at below-average, and he was diagnosed with various disorders, including, among others, post-traumatic-stress disorder, attention-deficit-hyperactive disorder, conduct disorder, oppositional defiant disorder, and cannabis-use disorder (moderate in a controlled environment). Due to his recent diagnosis of unspecified systolic congestive heart failure, he was not currently receiving medication for these various disorders. B.E.E.'s heart condition made him ineligible for the Challenge Academy's physically oriented behavior-modification program.

Based on the foregoing, Officer Freddie testified the Department recommended commitment of B.E.E. to the care, custody, and control of the TJJD. As noted in the modification-disposition report, given B.E.E.'s prior non-compliance with medical and mental-health treatment, as well as his history of truancy and running away (thus impeding his educational progress), the Department believed that commitment to TJJD would be in B.E.E.'s best interest. Specifically, it would aid his rehabilitation, as it would ensure B.E.E.'s adherence to medical and mental-health treatment, provide a battery of educational resources, (including technical-trade training), and restrict interaction with negative peers.[2]

On cross-examination, Officer Freddie testified that, other than the Challenge Academy, no other out-of-home placements were explored. Officer Freddie also agreed that the cardiologist

---

[2] The Department similarly initially recommended B.E.E. be placed at the Challenge Academy to provide a "higher structured environment and restrictions" due to B.E.E.'s adjudication history, repeated referrals to the Department, and failure to "tak[e] the initiative to change his behaviors."

4

who evaluated B.E.E. recommended that he undergo an MRI, a stress test, and cardio rehabilitation,[3] none of which had yet been provided due to appointments not being available for at least two months. Officer Freddie further mentioned the financial responsibility for these services was greater than what the Department had expected, and they would otherwise be available within TJJD. Officer Freddie agreed that B.E.E. had Medicaid coverage in the past, and if B.E.E.'s mother currently qualified, he would be able to obtain such coverage again. Additionally, Officer Freddie agreed various recommended medical and mental-health services may be generally available in the community, that B.E.E.'s mother did not report him being physically or verbally abusive at home, that B.E.E. reported recent attempts to refrain from criminal activity and gang association, and that his mother was supportive of his rehabilitation. Concerning B.E.E.'s recommended cardiological treatment, Officer Freddie testified the Department had been informed that B.E.E.'s medical needs would be addressed at TJJD.[4]

On re-direct, Officer Freddie testified B.E.E. had done poorly during his last detention; B.E.E. incurred reports for initiating or engaging in fights with other juveniles, defying prohibitions against accessing social media, instigating unit disruption by banging on doors and attempting to flood the unit, not following directives, and being disrespectful to staff. Officer Freddie testified while TJJD would be better able to take on the financial responsibility of B.E.E.'s medical treatment, it would also be able to better address B.E.E.'s need for rehabilitation. Officer Freddie had been familiar with B.E.E. and his family since 2019 and, having observed B.E.E. in

---

[3] B.E.E. contends on appeal that Officer Freddie "testified that Appellant's treating physician recommended that [he] be released so he could be treated for the heart condition." When asked if it was the doctor's recommendation for B.E.E. to be released so that he could get treated in the community, Officer Freddie replied, "That was the recommendation, yes, for him to get the treatment, yes."

[4] Officer Freddie's modification-disposition report noted that B.E.E. would be assessed by TJJD upon arrival and thereafter referred to a specialist in the area. It also noted B.E.E. had a history of absconding and thus not making himself available for medical or mental-health treatment and that TJJD "will assure the youth is transported to and from all required medical appointments and he takes his medication as required by the medical doctor." Further, B.E.E. would "be assigned to a facility which can adequately treat his needs to include his medical needs."

various contexts, believed he does best when in a controlled environment that forecloses his opportunities to engage in negative-peer associations and the ensuing negative decision-making.

Before the conclusion of the hearing, M.G.M. offered a brief statement in opposition to the Department's recommendation. M.G.M. asked the trial court to allow B.E.E. to return home, expressing she was afraid he would have a heart attack if not allowed to do so. She further testified he was a good boy in her home, that he showed respect to her and other relatives. Additional to this testimony, B.E.E. read into the record a letter he prepared in advance of the court's ruling, wherein he essentially claimed his new medical diagnosis provided the sort of awakening that would allow him to now change his life and implored the court to allow him another chance to show he could turn his life around.

### 2. The trial-court's ruling and findings

Before making its ruling, the trial court noted the following:

I remember when he was rejected from Challenge because of his medical condition, and I didn't have any great desire to commit him to TJJD, but I had Ms. Freddie [] check with them and make sure that they could address his medical needs and his psychiatric needs. . . . I wanted to make sure they can address this because otherwise I didn't want to send him down there. They said they can provide for all of his medical needs[,] and I don't agree that he is not a danger to the public. . . .[H]e does commit property crimes. He is out there by his own admission stealing cars to fuel his drug habit. And those property crimes are serious in that somebody loses their property and has to go get another car.

So, he is not rehabilitated in my opinion and his medical issues are just another factor we have to take into consideration, but we also have to consider rehabilitating him. And the only place we have at this point is TJJD. . . . If I released him home, I have little confidence that he would get the treatment that he needs. I think he would probably just take off. I am not sure whether the mother has the financial means to get him the treatment. But I know he will get it at TJJD[,] and I know he has quite an extensive psychiatric history that has to be addressed too, . . . and they can provide for that.

The trial court emphasized to B.E.E. that his drug use, his habit of running away, and his overall lifestyle were not conducive to managing his health, and further, although his mother tried her best, B.E.E. had shown he did not listen to her. The judge noted that "the doctor says you do

6

much better in a structured setting,"[5] and assured B.E.E. that Officer Freddie "double-checked []

to make sure you are going to be treated well and we can get these conditions addressed." In short,

the trial court reasoned that the commitment to TJJD would help address all the problems that

contributed to B.E.E.'s continued delinquency, and thus, it was "a blessing in disguise."

Finding that B.E.E. posed a risk to the safety and protection of the community if no

disposition was made, that B.E.E. needed to be held accountable for his delinquent behavior, that

the gravity of the offense and B.E.E.'s juvenile record indicated the need for confinement in a

secure facility, that he did not have a parent who could suitably supervise, control, or discipline

him, that reasonable efforts had been made to avoid removal of B.E.E. from his home, and that

B.E.E.'s behavioral and mental-health needs would not be met with available community

resources, the trial court entered an order and judgment of commitment.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his sole issue, B.E.E. challenges the sufficiency of the evidence to support the trial

court's finding that his commitment to TJJD was in his best interest.[6] His only claim in this regard

is that the trial court had insufficient evidence from which to reasonably believe B.E.E. would

receive medical treatment for his heart condition at TJJD, rendering the trial court's commitment

order against his best interest. The State essentially counters that the records and testimony

admitted into evidence show the Department sufficiently investigated and assessed B.E.E.'s needs

in determining it was in his best interest to be committed to TJJD, where his medical needs, among

---

[5] Dr. Tolulope Shada noted in his April 2021 psychiatric-evaluation report noted that being in a structed facility was a mitigating factor for B.E.E.

[6] B.E.E. does not specify whether he challenges the factual or legal sufficiency (or both) of the evidence to support the juvenile court's best-interest finding. We thus review the complained-of finding under both sufficiency standards.

others, would be met, and as such, the trial court did not abuse its discretion in finding commitment to TJJD was in B.E.E.'s best interest. We agree with the State.

## A. Standard of review and applicable law

A trial court's modification of disposition is governed by Section 54.05 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.05. A juvenile court that modifies a prior disposition and commits a child to TJJD is required to recite in its order a determination that: (1) it is in the child's best interests to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and (3) the child, in the child's home, cannot be provided the quality of care and the level of support and supervision that the child needs to meet the conditions of probation. *Id.* § 54.05(m). B.E.E. challenges only the first of these required findings.

As B.E.E. recognizes on appeal, juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children who have been found to have engaged in delinquent conduct, especially in hearings to modify disposition. *In re M.A.S.*, 438 S.W.3d 803, 806 (Tex. App.—El Paso 2014, no pet.); *In re G.W.*, 396 S.W.3d 202, 204 (Tex. App.—El Paso 2013, no pet.). As such, we review the order committing B.E.E. to the TJJD under an abuse-of-discretion standard, which allows us to reverse the trial court only when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *M.A.S.*, 438 S.W.3d at 806–07; *G.W.*, 396 S.W.3d at 204. A juvenile court does not abuse its discretion merely because it decides a matter differently than the appellate court would in a similar situation, even when the trial court bases its decisions on conflicting evidence. *M.A.S.*, 438 S.W.3d at 807; *G.W.*, 396 S.W.3d at 204. Nor does an abuse of discretion occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *M.A.S.*, 438 S.W.3d at 807; *G.W.*, 396 S.W.3d at 204; *see also In re A.T.M.*, 281 S.W.3d 67, 71 (Tex. App.—El Paso 2008, no pet.).

Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are relevant in evaluating whether the juvenile court abused its discretion. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.). In reviewing the legal sufficiency of the evidence supporting a juvenile court disposition, an appellate court considers the evidence and inferences tending to support the court's findings and sets aside the judgment only if there is no evidence of probative force to support the findings. *Id.*; *In re H.R.C.*, 153 S.W.3d 266, 269 (Tex. App.—El Paso 2004, no pet.); *In re C.J.H.*, 79 S.W.3d 698, 703 (Tex. App.—Fort Worth 2002, no pet.). We consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *A.T.M.*, 281 S.W.3d at 71. Anything more than a scintilla of evidence is legally sufficient to support the finding. *C.J.H.*, 79 S.W.3d at 703. In reviewing the factual sufficiency of the evidence supporting a juvenile court's disposition, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly unjust. *A.T.M.*, 281 S.W.3d at 71; *C.G.*, 162 S.W.3d at 452; *H.R.C.*, 153 S.W.3d at 269.

**B.  The evidence is legally and factually sufficient to support the juvenile court's best-interest finding**

The crux of B.E.E.'s claim on appeal is that, in concluding commitment to TJJD was in his best interest, the trial court improperly relied on Officer Freddie's in-court assertions that B.E.E.'s heart condition could be treated at TJJD. B.E.E.'s contention in this regard is premised on the trial court's oral statements that it did not want to send B.E.E. to TJJD if his medical needs would be left unaddressed.

First, our review of the record shows that that trial court's statements on this point are not as narrow as B.E.E. contends. True, the trial court expressed great concern over B.E.E.'s heart condition, but in context, its best-interest determination did not turn on this issue alone. Indeed, before entering its commitment order, the trial court stated that B.E.E.'s "medical issues are just

another factor [it] ha[d] to take into consideration, but [it] also ha[d] to consider rehabilitating him."

Second, even if TJJD's ability to treat B.E.E.'s heart condition was the dispositive factor in the best-interest analysis (which we do not so hold), we disagree with B.E.E.'s characterization of the state of the evidence. Our review of the record shows that, in addition to Officer Freddie's testimony regarding TJJD's ability to treat B.E.E.'s medical needs, the trial also had before it Officer Freddie's modification-disposition report, which the Texas Family Code expressly authorizes it to consider when modifying a child's disposition. *See* TEX. FAM. CODE ANN. § 54.05(e). After detailing B.E.E.'s newly diagnosed heart condition, as well as the cardiologist's examination and recommendations on further testing and treatment, Officer Freddie's modification-disposition report noted that B.E.E. would be assessed by TJJD upon arrival and thereafter referred to a specialist in the area. Noting how B.E.E. jeopardized his mental-health and medical wellbeing, as evinced by his history of absconding and thus not making himself available for medical or mental-health treatment, Officer Freddie explained in her report that TJJD "will assure [sic] the youth is transported to and from all required medical appointments and he takes his medication as required by the medical doctor." Further, she explained B.E.E. would "be assigned to a facility which can adequately treat his needs to include his medical needs." On review, we disagree with B.E.E.'s assertion that the record contains nothing more than Officer Freddie's "blanket statement alone" that TJJD could address his medical needs and that this evidence is unsupportive of the trial court's best-interest finding. *See In re M.O.*, 451 S.W.3d 910, 915 (Tex. App.—El Paso 2014, no pet.) (finding no abuse of discretion in TJJD commitment order where record showed need for juvenile's rehabilitation and need to protect the community based, in part, on probation officer's testimony that there was no less-restrictive alternative to TJJD that could address juvenile's needs); *In re M.M.*, No. 09-98-234CV, 1999 WL 111279, at *3

10

(Tex. App.—Beaumont, Mar. 4, 1999, no pet.) (not designated for publication) (evidence supporting best-interest finding was legally and factually sufficient where state therapist testified in court she did not believe any long-term residential facility existed that could address juvenile's need for structured environment and medical treatment other than TYC [TJJD's predecessor] and where juvenile had become involved in drugs and gangs under mother's care); *cf. In re M.A.C.*, 999 S.W.2d 442, 448 (Tex. App.—El Paso 1999, no pet.) (finding evidence supporting TYC commitment order factually sufficient where probation officer asserted in court he spoke with alternative placement's director but determined juvenile was not a candidate for said program).

Here, the trial court explained that Officer Freddie had been asked to "double-check" that TJJD could adequately address B.E.E.'s medical needs. The evidence established that TJJD would address not only B.E.E.'s need for medical treatment, but also his need for substance-abuse and mental-health treatment, academic development, and would otherwise provide the kind of highly structured environment that would help B.E.E. modify his behavior, which, despite his mother's support and guidance, B.E.E. had proved himself incapable of achieving at home; even while detained, B.E.E. continued to display problematic behaviors, including initiating or engaging in fights with other juveniles, defying prohibitions against accessing social media, instigating unit disruption by banging on doors and attempting to flood his unit, not following directives, and being disrespectful to staff.

B.E.E. does not challenge on appeal the propriety of the trial court's consideration of these various other factors in making the required best-interest finding, and we conclude there is more than a scintilla of evidence to support the trial court's finding that commitment to TJJD was in B.E.E.'s best-interest; we similarly find the evidence is not so against the great weight and preponderance of the evidence as to be clearly unjust. *See In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *5–6 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.) (finding

11

evidence of juvenile's history of leaving mother's home without permission, continued and repeated criminal conduct, issues at school, habitual drug use, and need for structured and secure residential setting sufficient to support best interest finding).

We overrule B.E.E.'s sole issue on appeal.

### III.    CONCLUSION

We affirm the juvenile court's judgment of commitment.


GINA M. PALAFOX, Justice

December 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.