COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| | | No. 08-17-00209-CV |
| IN THE MATTER OF V.L.T., | § | |
| | | Appeal from |
| A JUVENILE. | § | |
| | | 68th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 1500752) |
| | § | |

## **O P I N I O N**

Appellant V.L.T, a juvenile, admitted to engaging in delinquent conduct by committing an aggravated robbery and aggravated assault. The trial court adjudicated him accordingly, and at a subsequent disposition hearing placed V.L.T. on intensive supervision probation. While under intensive supervision probation, V.L.T. skipped 84 classes at school, failed to attend trauma counseling sessions, and was arrested for assault causing bodily injury. The State moved to modify the disposition. The lower court did so and committed Appellant to the custody of the Texas Juvenile Justice Department (TJJD).

In a single issue, V.L.T. argues that the evidence is insufficient to support the trial court's finding that reasonable efforts had been made to prevent or eliminate the need for his removal from home and to make it possible for him to return home. *See* TEX.FAM.CODE ANN. § 54.05(m)(1)(B) (requiring such finding before a juvenile may be committed to TJJD in a hearing to modify). We, however, affirm.

**CONTROLLING LAW AND STANDARD OF REVIEW**

A juvenile court possesses broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent behavior. *In re E.F.Z.R.*, 250 S.W.3d 173, 177 (Tex.App.--El Paso 2008, no pet.). The juvenile court abuses its discretion when it acts unreasonably or arbitrarily without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985); *In re G.W.*, 396 S.W.3d 202, 204 (Tex.App.--El Paso 2013, no pet.). A juvenile court does not abuse its discretion merely because it decides a matter differently than the appellate court would in a similar situation. *In re M.O.*, 451 S.W.3d 910, 914 (Tex.App.--El Paso 2014, no pet.); *In re G.W.,* 396 S.W.3d at 204. Nor does the juvenile court abuse its discretion by basing a decision on conflicting evidence. *In re M.O.*, 451 S.W.3d at 914; *In re G.W.,* 396 S.W.3d at 204.

We deal here with the modification of an earlier made disposition order. Section 54.05 of the Texas Family Code guides the juvenile court's exercise of discretion regarding modification of dispositions. *In re M.O.*, 451 S.W.3d at 914. When a juvenile's prior disposition is based on a felony offense, as here, the juvenile court may modify the disposition and commit the juvenile to TJJD if the court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court. *See* TEX.FAM.CODE ANN. § 54.05(f). The court must include in its order, however, a determination that (A) it is in the child's best interests to be placed outside the child's home, (B) reasonable efforts were made to avoid removal from the home, and (C) the child's home cannot provide the proper environment (care, support, supervision) that the child needs to meet the conditions of probation. TEX.FAM.CODE ANN. § 54.05(m)(1)(A)-(C). The trial court made each of the required findings and included them in the disposition order. V.L.T's brief challenges only the second of the required findings--that reasonable efforts were made to keep the child at home.

2

In conducting our review, we engage in a two-pronged analysis: (1) was there sufficient information upon which to exercise discretion, and (2) did the juvenile court err in its application of discretion? *In re E.F.Z.R.*, 250 S.W.3d at 176. We review the evidence supporting these findings under the civil sufficiency standards. *See id.*; *In re A.S.*, 954 S.W.2d 855, 861 (Tex.App.--El Paso 1997, no pet.). When determining whether there is legally sufficient evidence to support the finding under review, we consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence supporting a finding renders the evidence legally sufficient. *In re J.C.C.*, 538 S.W.3d 183, 186 (Tex.App.--El Paso 2018, no pet.). When reviewing the factual sufficiency of the evidence to support a finding, we set aside the finding only if after considering all of the evidence in the record, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, as to be manifestly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re E.F.Z.R.*, 250 S.W.3d at 176.

## FACTUAL BACKGROUND

V.L.T. first encountered the juvenile justice system when as a fifteen-year old, he was found in possession codeine in violation of the Texas Health and Safety Code. He was placed in a deferred prosecution program, which he successfully completed by March 17, 2016.

In April of 2016, however, he began smoking marijuana. Further, V.L.T admitted to two felony offenses that occurred on June 18, 2016. One offense described how he threatened a person with a firearm in the process of stealing a cell phone. The other charge involved causing bodily injury to another person when V.L.T. punched him, and in the process exhibited a deadly weapon. In its disposition hearing, the juvenile court entered a judgment of probation that placed V.L.T. on "Intensive Supervision." Under the terms of that supervision, V.L.T. continued to live at home,

3

but was required among other things, to respect a curfew, attend school and not be truant, submit to urinalysis, and attend counseling as directed by the Juvenile Probation Department ("the Department").

At the time, V.L.T. lived with his mother--there were no other family members in the household. In late October 2016, V.L.T.'s mother was arrested and jailed for possession of a controlled substance. V.L.T. was sent to live for a time with an aunt. By the end of December, a probation review found that V.L.T. had completed substance abuse counseling and passed all the urinalysis screens for illicit substances. The probation officer noted one curfew violation and one association with individuals who were in possession of alcohol. V.L.T. was recommended for continued trauma counseling through a provider, Aliviane. A psychiatric assessment had diagnosed V.L.T. with Post Traumatic Stress Disorder, arising out from incidents with his father, now estranged from the family, who had physically and sexually assaulted him from age five until age eight.

In March 2017, V.L.T.'s mother was again arrested and jailed on drug charges. A different aunt took care of V.L.T. until the mother could bond out. By the time of a May 2017 probation review, V.L.T. had tested positive for cannabinoids and incurred an additional curfew violation. Of additional concern, he had skipped 51 classes at school. While he had successfully completed substance abuse counseling, he was discharged from trauma counseling on March 13, 2017 "due to inactivity, no shows or cancellations." His probation officer stated that he "needed to resume trauma informed counseling due to his past history of emotional/physical abuse and due to current living situation regarding parent's incarceration."

On June 28, 2017, V.L.T. was arrested for assault-causing-bodily-injury arising out of an incident with his girlfriend. While that charge was later dismissed for time served, it led to the State's Motion to Modify Disposition, which is the issue before us. At the August 24, 2017 hearing

4

on the motion to modify, the State introduced the following evidence either through reports or the testimony of the probation officer: From January 23, 2017 to May 10, 2017, V.L.T. had 84 unexcused absences from classes at school. He was failing five out of six classes. V.L.T. was discharged from trauma counseling due to inactivity, no shows, or cancellation of appointments. He had four curfew violations and two positive urine tests showing cannabinoids. The positive drug tests came after he had already completed substance abuse counseling, and he was referred again for more counseling, which he did not complete. V.L.T. was also reported to have associated with members of a gang and others that engaged in drug use.

The Department believed that V.L.T.'s mother had contributed to his delinquency and was not providing a suitable home environment. V.L.T. and his mother had a volatile relationship that varied from verbal disrespect to physical aggressiveness. The mother claimed that V.L.T. had assaulted her in June of 2017. The two aunts who had taken V.L.T. in earlier were no longer willing because of his verbal aggression, noncompliance, and lack of candor. V.L.T. would turn eighteen in January 2018, and the Department was concerned that the short time frame limited its options to provide trauma related counseling. Several of its programs either required longer time commitments, or the programs had turned V.L.T. down because of disqualifying circumstances.[1] The Department recommended that V.L.T. be committed to a specific out-of-town TJJD facility where he could receive therapeutic services.

V.L.T. and his mother testified at the hearing. The mother claimed that her relationship with V.L.T. had very recently turned around and that she could provide a proper home

---

[1] The department operates residential treatment facilities, but they operate on six months to one-year cycles and V.L.T. would age out in four months. The Department also utilizes the "Challenge Program" which is also referred to as boot camp. V.L.T. was not eligible for that program because he was too close to turning eighteen. The Department also utilizes the Serious or Habitual Offender Comprehensive Action Program (SHOCAP), but V.L.T. was turned down for that program because of his lack of compliance. Another program--the Special Needs Diversionary Program (SNDP)--provides mental health treatment and specialized supervision to rehabilitate juvenile offenders. *See* http://www.tjjd.texas.gov/services/sndp.aspx (last visited September 21, 2018). V.L.T. was turned down from that program because of his drug usage.

5

environment. V.L.T. also asked that he not be committed to TJJD. He took responsibility for his past mistakes and assured the court that he had learned from those mistakes. He did not offer evidence of any specific local program that he was qualified to attend, nor did he contest the violation of the terms of intensive supervision that the Department had alleged.

Based on this evidence, the court committed Appellant to TJJD. The juvenile court's rationale was best stated at the hearing:

> I am not doing it as a punishment. This is one more option that we have for treatment and it's the best bet we have. . . . . I am trying to do what's best for you and this is really what's best for you. There is nothing available here or else I would put you there. You have got to deal with these things. I am telling you. You have been through an awful life and you have got to deal with it, so it doesn't ruin you. Other people ruined your life in the beginning. You don't want to ruin what's left of your life.

## DISCUSSION

In his sole issue, V.L.T. challenges the legal and factual sufficiency of the evidence supporting the trial court's decision to commit him to the TJJD. More specifically, he argues that there is no evidence of any reasonable efforts to keep him in his home and eliminate the need for his removal. And distilled down further, V.L.T. argues that a single attempt at trauma counseling for his PTSD was an insufficient reasonable effort to keep him at home.

V.L.T.'s argument is built on several premises. First, he claims that the underlying cause of his issues are the PTSD stemming from his abusive father--a proposition the court below accepted. He next urges that the Department was late to identify and treat the PTSD, and that it failed to implement a plan to achieve the goal of counseling. V.L.T. then points to several of our prior opinions that state a trial court is "permitted to decline third or fourth chances to a juvenile who has abused a second chance." *In re M.O.*, 451 S.W.3d at 915; *see also In re M.A.S.*, 438 S.W.3d 803, 807 (Tex.App.--El Paso 2014, no pet.); *In re C.J.B.*, 463 S.W.3d 626, 631 (Tex.App.--El Paso 2015, no pet.). From this statement, V.L.T. reasons that he was entitled to at least a second chance for trauma counseling, and failing that, the evidence is factually insufficient

6

to support the finding of reasonable efforts.

We can dispense with this last argument first. The language regarding second, third, and fourth chances can be traced back to *In re J.P.*, 136 S.W.3d 629 (Tex. 2004) where the court wrote:

> Commitment to TYC by modification order is proper only if a juvenile originally committed a felony or multiple misdemeanors, and subsequently violated one or more conditions of probation. In such circumstances, the statute allows a trial court to decline third and fourth chances to a juvenile who has abused a second one.

*Id.* at 633 [footnote omitted]. The first and second chance referred to by the *In re J.P.* court was (1) the chance not to commit the original offense, and (2) the chance given through the probation disposition for that offense. *In re J.P.* does not hold that a juvenile is entitled to a chance beyond that, and certainly not a second chance on any specific treatment regime (such as here, the trauma counseling) that is part of an intensive supervision probation.

Viewed broadly, V.L.T. was accorded several chances at remaining in a home setting. V.L.T. was given a first chance with the system through the deferred prosecution program used for his drug possession charge. Three months after completing that program, however, he admitted to committing two acts that would constitute felonies for an adult. The trial court gave him another chance by placing him on intensive supervision. His probation officer gave him additional chances. As he began accumulating multiple absences at school in violation of a term of the probation, the officer testified she admonished him in their regular meetings, and even once set up a conference at his school.[2] Stated otherwise, the Department did not move to modify at the point of the first technical violation, but counseled V.L.T. about the need to comply with the terms of

---

[2] The probation officer was specifically asked about the accumulating absences:

> Q. And was the juvenile ever at that point admonished?
> A. Yes.
> Q. Okay. By this Court?
> A. Not by the Court. By myself, by the case manager, we had him come in several times into the office. We did weekly visits and we addressed those with him. One time we even met with the counselor at school which included [V.L.T.] and we kind of went over those as well.

his probation.

Focused just on mental health issues, a Modification Disposition Report admitted at the hearing notes that V.L.T. received individual counseling from 2010 to 2013 and from December 14, 2015 to March 8, 2016. Dr. Jorge Avila performed a psychiatric evaluation on November 7, 2016 that diagnosed V.L.T. with PTSD, ADHD, and as bipolar.[3] V.L.T. was on a medication regime that was being regularly reviewed. While he contends that the Department only began trauma counseling late in the game, the record shows that the timing decision for trauma counseling was made by the provider, Aliviane. It determined that V.L.T. first needed to complete substance abuse counseling. The substance abuse counseling was provided from July 26, 2016 to October 18, 2016. Trauma focused counseling then started on October 13, 2016 and continued to March 13, 2017, when as noted previously, V.L.T. was dismissed "due to inactivity, no shows and/ or cancellations." In sum, the record shows some reasonable efforts to prevent the removal of the juvenile from the home. *Cf. In re J.C.C.*, 538 S.W.3d at 187-88 (counseling directed at juvenile's PTSD, and the incremental modifications to probation restrictions were reasonable efforts to avoid removal); *In re M.O.*, 451 S.W.3d at 915 (reasonable efforts standard met when juvenile was first placed on probation, then modified to intensive supervision, which was then followed by multiple serious violations).

Our court has sustained a challenge to an *initial* disposition sending a juvenile to commitment, when there was no evidence of any reasonable effort to seek an alternative. *In re A.S.*, 954 S.W.2d at 862-63. That is not the situation here. V.L.T. was provided counseling for substance abuse and trauma. The Department also provided testimony about the alternative programs that it considered but could not utilize due either to the eligibility criteria, or the time

---

[3] A later report by Dr. Cynthia Garza refers to an even earlier evaluation by a Dr. Rice when V.L.T. was fifteen years old, and which also diagnosed PTSD.

needed to complete the programs. As we said in *In re M.O.*, "[t]he exhaustion of all possible alternatives to commitment is not required before a court modifies a disposition and commits a juvenile to TJJD." 451 S.W.3d at 915, *citing In re M.A.S.,* 438 S.W.3d at 807; *In re J.R.C.,* 236 S.W.3d 870, 875 (Tex.App.--Texarkana 2007, no pet.). Nor is the court required to consider alternative dispositions in a modification hearing when the juvenile was adjudicated delinquent based on conduct that would constitute a felony. *In re A.T.M.,* 281 S.W.3d 67, 72 (Tex.App.-- El Paso 2008, no pet.). V.L.T.'s brief admits the need for treatment for his PTSD. The probation officer testified that the best alternative for obtaining counseling was through the commitment to TJJD.

In summary, the evidence admitted at the disposition hearing, viewed in the light most favorable to the challenged finding, is legally sufficient to show that the Department made reasonable efforts to prevent or eliminate the need to remove V.L.T. from his home. We reach the same conclusion after viewing the evidence in a neutral light as required by the factual sufficiency standard. Having found the evidence both legally and factually sufficient to support the challenged finding, we find no abuse of discretion in the juvenile court's modification of disposition and overrule Issue One. The judgment of the lower court is affirmed.


December 14, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

9