# NO. 12-19-00259-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|                          |   |                        |
|--------------------------|---|------------------------|
| *IN THE MATTER OF T.D.,* | § | *APPEAL FROM THE COUNTY* |
|                          | § | *COURT AT LAW NO. 3*   |
| *A JUVENILE*             | § | *SMITH COUNTY, TEXAS*  |

## *MEMORANDUM OPINION*

T.D., a juvenile, appeals the trial court's order committing him to the Texas Juvenile Justice Department (TJJD) for a determinate sentence of twelve years following its adjudication that he engaged in delinquent conduct.  In two issues, T.D. argues that the trial court abused its discretion in ordering that he be committed to TJJD and that his fundamental due process rights were violated during the disposition proceedings.  We affirm.

## BACKGROUND

T.D.[1] and his cousin stole two elderly women's purses in downtown Tyler, Texas.  As they did so, they knocked the women to the ground, injuring them.  A bystander tackled T.D. as he fled the scene.  T.D. later was arrested.

The State filed an amended petition, in which it alleged that T.D. engaged in delinquent conduct in that he violated penal law by committing robbery and aggravated robbery.  T.D. pleaded "true" to the allegations and signed a stipulation of evidence. Thereafter, the trial court accepted T.D.'s stipulation and adjudicated that T.D. was a juvenile who had engaged in the alleged delinquent conduct.

The trial court next considered the matter of T.D.'s disposition, during which time the State presented it with a predisposition report and a parental written statement.  Ultimately, the trial

---

[1] The record reflects that T.D. was sixteen-years-old at the time of the underlying incident.

1

court found, in pertinent part, that (1) reasonable efforts were made to prevent or eliminate the need for T.D.'s removal from his home and to make it possible for T.D. to return home, (2) T.D., in his home, cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation, and (3) the best interest of T.D. and the best interest of society will be served by committing T.D. to the care, custody, and control of TJJD. As a result, the trial court rendered an order committing T.D. to TJJD for a determinate sentence of twelve years. This appeal followed.

**EVIDENTIARY SUFFICIENCY**

In his first issue, T.D. argues that the trial court abused its discretion by ordering that he be committed to TJJD because the evidence is legally and factually insufficient to support the trial court's finding that reasonable efforts were made to prevent or eliminate the need for his removal from his home and to make it possible for him to return home.

**Standard of Review and Governing Law**

The findings of a juvenile court in its disposition order will not be disturbed absent an abuse of discretion because a juvenile judge has broad discretion to determine the proper disposition of a child who has been adjudicated as engaging in delinquent behavior. *See In re V.L.T.*, 570 S.W.3d 867, 869 (Tex. App.–El Paso 2018, no pet.); *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.–Dallas 2005, no pet.). "An abuse of discretion occurs when the trial court acts unreasonably or arbitrarily, or without reference to any guiding rules or principles." *In re E.K.G.*, 487 S.W.3d 670, 673 (Tex. App.–San Antonio 2016, no pet.). A juvenile court does not abuse its discretion merely because it decides a matter differently than the appellate court would in a similar situation or by basing its decision on conflicting evidence. *See In re V.L.T.*, 570 S.W.3d at 869.

Under an abuse of discretion standard, legal and factual insufficiency are relevant factors to consider in assessing whether the trial court abused its discretion. *See In re C.G.*, 162 S.W.3d at 452. When determining whether there is legally sufficient evidence to support the finding under review, we consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *See In re V.L.T.*, 570 S.W.3d at 869 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005)). Anything more than a scintilla of evidence supporting a finding renders the evidence legally sufficient. *In re V.L.T.*, 570 S.W.3d at 869. When reviewing the factual sufficiency of the

2

evidence to support a finding, we set aside the finding only if after considering all of the evidence in the record, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, as to be manifestly wrong. *Id.* at 870.

In committing a juvenile to TJJD, a trial court must include in the disposition order, among other things, its determination that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home *See* TEX. FAM. CODE ANN. §54.04(i)(1)(B) (West Supp. 2019). "At the disposition hearing, the juvenile court, notwithstanding the Texas Rules of Evidence or Texas Code of Criminal Procedure, Chapter 37, may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses." *Id*. § 54.04(b) (West Supp. 2019). Generally, a trial court does not abuse its discretion in rendering a commitment order when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public or when the juvenile has been given a negative recommendation for probation. *In re L.D.*, No. 12-06-00193-CV, 2007 WL 677828, at *2 (Tex. App.–Tyler Mar. 7, 2007, no pet.) (mem. op.). The Texas Family Code places no burden of proof on the state at the disposition phase, and juvenile proceedings are governed by civil procedures unless otherwise provided in the Family Code. *See In re E.K.G.*, 487 S.W.3d at 673–74.

A trial court is not required to exhaust all possible alternatives before sending a juvenile to TJJD. *See In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.–Texarkana 2007, no pet.). Furthermore, a court may consider drug use and a poor academic record in determining whether commitment is appropriate. *See In re C.G.*, 162 S.W.3d at 452; *see also In re J.D.P.*, 85 S.W.3d 420, 429 (Tex. App.–Fort Worth 2002, no pet.) ("It is also clear from the record that probation, medication, alternative schools, years of weekly counseling sessions, and other types of intervention have been attempted and have had little or no effect on [a]ppellant's behavior"); *In re B.M.*, 1 S.W.3d 204, 209 (Tex. App.–Tyler 1999, no pet.) (evidence of juvenile's two previous periods of probation prior to offense at issue supported disposition placing him outside the home); *In re M.S.*, 940 S.W.2d 789, 792 (Tex. App.–Austin 1997, no writ) (trial court entitled to consider in conjunction with disposition fact that appellant's home was not ideal environment and that appellant and siblings had been removed from home in past).

**Discussion**

In the instant case, the predisposition report contains the recommendation of T.D.'s probation officer that he be committed to TJJD for a determinate sentence, offense reports from the underlying robbery and aggravated robbery, and a detailed evaluation by Licensed Professional Counselor Joni Simmons. According to Simmons's evaluation, when T.D. was processed into the Juvenile Detention Center for the instant offenses, he tested positive for cocaine and marijuana and later admitted to her that he has used marijuana daily since he was fifteen-years-old. Simmons discovered that T.D. previously had engaged in ten misdemeanor offenses in Dallas, Hopkins, Van Zandt, and Hunt Counties over the past three years, which consisted of six counts of criminal mischief in May 2016, for slashing tires with his cousin/co-defendant while T.D. was "high on marijuana[,]" an assault causing bodily injury and resisting arrest on August 30, 2018, possession of marijuana on January 21, 2019, and another assault causing bodily injury on February 17, 2019. The predisposition report indicates that T.D. received referrals for the two assaults resulting in a supervisory caution disposition for the first offense and deferred probation for the second offense. T.D. also received a referral for the 2016 criminal mischief offense, for which he was placed on deferred probation. At the detention hearing, T.D.'s mother revealed that she and T.D.'s younger sister were the respective victims of his two assault referrals.

Simmons noted that T.D. had not progressed in school beyond the ninth grade. She also noted that he was referred to the Disciplinary Alternative Education Program several times for "behavioral infractions[,]" such as being disrespectful to teachers and disrupting classes, he was suspended in 2016, he constantly was in trouble at school, and he "continually [was] disrespectful to authority."

Simmons also determined that T.D.'s family had a significant history with the Texas Department of Family and Protective Services (DFPS), wherein T.D. and his siblings were removed from their mother's care on two occasions—once in 2007 as a result of "neglectful supervision" and again in 2015 for reasons Simmons was unable to determine. During DFPS's interactions with the family, T.D. refused to talk with counselors. Simmons noted that DFPS again sought to remove the children from their mother's care in 2016 because T.D.'s mother, her

4

boyfriend,[2] and her infant child tested positive for THC. However, DFPS was unable to locate the family.

Simmons further set forth in her evaluation that T.D.'s family moved at least four times in four years due to "changes of schools, supervision, and intervention services." Her evaluation also lists numerous diagnoses for T.D., including conduct disorder (unspecified onset), emerging antisocial personality traits, cannabis use disorder, severe stimulant use disorder (cocaine, unspecified), attention deficit hyperactivity disorder (ADHD) (by history, parent report), and dysfunctional family dynamic. She notes in her evaluation that although T.D. was prescribed medication for ADHD, his mother told Simmons that she did not believe T.D. had taken his medication for several weeks.

In concluding that T.D. should be placed outside the home, Simmons states in her evaluation as follows:

> This evaluation reveals significant concern related to the successful rehabilitation of [T.D.]. His issues are behavioral and environmental, and he is not demonstrating empathy or insight. While in a restrictive environment, he has not responded to rules or expectations. The most notable concern is regarding previous abuse/neglect. While there are likely numerous psychological and emotional issues related to [DFPS] removal and family dynamics, at this point, [T.D.] has perverted his history into a permission for delinquent conduct. This is evident by his statements about [DFPS] history helping him to avoid consequences. [T.D.] was oppositional and rehearsed during interviewing. He was smug and dismissive. His posture towards the criminal justice system is that of a young man unwilling to change his behaviors or comply with expectations. He has little to no respect for others; especially authority figures. [T.D.] has repeatedly failed under supervision in the community.

Based on "concern for the safety of the public[,]" Simmons recommended T.D.'s referral to a "secure structured environment with immediate consequences and rewards for behavior."

During the hearing, the trial court referred to T.D.'s bad behavior while he was in detention pending adjudication in the instant case.[3] T.D.'s mother submitted a parental statement indicating that T.D. had a support system in her home. But at the disposition hearing, she told the trial court that she "wasn't asking for probation."

---

[2] Simmons's report indicates that T.D.'s biological father lives in Chicago, Illinois and is not involved with the family.

[3] T.D. remained in detention following his arrest in this matter. Simmons's evaluation indicates that while in detention, T.D. had multiple disciplinary incidents involving violent, aggressive outbursts against other residents.

Apart from T.D.'s mother's parental statement, we can find little, if any, evidence of record that indicates that an alternative secure structured placement other than TJJD was available to T.D. *See **In re E.K.G.***, 487S.W.3d at 673–74; ***In re J.R.C.***, 236 S.W.3d at 875. Based on our review of the record, we conclude that there is more than a scintilla of evidence supporting the trial court's finding that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home. *See* TEX. FAM. CODE ANN. §54.04(i)(1)(B); ***In re V.L.T.***, 570 S.W.3d at 869. Further, based on our review of the record, we cannot conclude that the credible evidence supporting the trial court's finding is so weak, or so contrary to the overwhelming weight of all the evidence, as to be manifestly wrong. *See* TEX. FAM. CODE ANN. §54.04(i)(1)(B); ***In re V.L.T.***, 570 S.W.3d at 870. Therefore, we hold that the trial court did not abuse its discretion by ordering that T.D. be committed to TJJD for a determinate sentence. T.D.'s first issue is overruled.

## FAILURE TO ADMONISH AND DENIAL OF DUE PROCESS

In his second issue, T.D. argues that the trial court violated his right to fundamental due process as required by the United States Constitution, the Texas Constitution, and the Texas Family Code. Specifically, T.D. contends that the trial court failed to properly admonish him generally about the disposition hearing or about the range of punishment in a determinate sentence juvenile case. He further contends that the trial court failed to conduct the disposition phase of the proceedings in a manner that was distinct and subsequent from the adjudication proceedings.

Based on our review of the record, it is apparent that T.D. failed to lodge an objection either to lack of admonishment or unusual conduct of the proceedings by the trial court.[4] Thus, we hold that T.D. has forfeited any such claims by failing to timely raise his objection to the trial court. *See **In re C.D.H.***, 273 S.W.3d 421, 425 (Tex. App.–Texarkana 2008, no pet.) (statute requiring trial court to explain "possible consequences of the proceedings" in juvenile adjudication hearing explicitly requires preservation of any failure of trial court to provide proper explanation.); ***In re T.W.C.***, 258 S.W.3d 218, 221 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (in case where trial court erroneously admonished on range of punishment, court noted that Texas Family Code,

---

[4] We note that at the hearing on this matter, in response to the State's expressed recommendation of a twelve-year determinate sentence, Appellant's counsel stated, "Judge, the 12-year sentence is what [T.D.] and I understood." The trial court noted that the maximum sentence was much higher than twelve years, to which Appellant's counsel responded, "I understand that, Judge, and I've explained that . . . ."

6

Section 54.03(i) requires objection to omitted or incomplete admonishment); ***In re C.C.***, 13 S.W.3d 854, 858 (Tex. App.–Austin 2000, no pet.) (op. on reh'g) (trial court's failure to admonish that confinement at [TJJD] was possible consequence and alleged due process errors not preserved due to failure to object); *see also* TEX. FAM. CODE ANN. § 54.03(i) (West 2014); TEX. R. APP. P. 33.1.  T.D.'s second issue is overruled.

## DISPOSITION

Having overruled T.D.'s first and second issues, we ***affirm*** the trial court's order committing him to TJJD for a determinate sentence.

<u>GREG NEELEY</u>
Justice

Opinion delivered March 31, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2020**

**NO. 12-19-00259-CV**

**IN THE MATTER OF T.D., A JUVENILE**

Appeal from the County Court at Law No. 3
of Smith County, Texas (Tr.Ct.No. 003-0116-19)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*