

# NUMBER 13-21-00428-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF V.G., A CHILD

### On appeal from the 25th District Court
### of Lavaca County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant V.G.,[1] a juvenile, appeals the trial court's order revoking probation and committing him to the Texas Juvenile Justice Department (TJJD). *See* TEX. FAM. CODE ANN. § 54.05. By two issues, V.G. argues (1) the trial court's commitment findings were

---

[1] We refer to appellant and his family by their initials as required by statute. *See* TEX. FAM. CODE ANN. § 56.01(j) ("Neither the child nor his family shall be identified in an appellate opinion rendered in an appeal or habeas corpus proceedings related to juvenile court proceedings under this title.").

not supported by legally sufficient evidence, and (2) the written judgment conflicts with the trial court's oral findings. We modify the trial court's judgment and affirm as modified.

## I.    BACKGROUND

The State filed a petition alleging that, on or about October 29, 2020, V.G. engaged in delinquent conduct by committing the offense of aggravated assault of a family or household member, a first-degree felony.[2]  *See id.* § 51.03 (defining delinquent conduct); *see also* TEX. PENAL CODE ANN. § 22.02(b)(1). Following a hearing on May 5, 2021, wherein V.G. pleaded true to the allegations, the trial court adjudicated V.G. as having engaged in delinquent conduct. *See* TEX. FAM. CODE ANN. § 54.03 (adjudication hearing). After a separate disposition proceeding, the trial court ordered V.G. to be "placed on probation until his [eighteenth] birthday,"[3] during which he was to remain in the physical custody of his adult sister, C.V.G, in Travis County. *See id.* § 54.04 (disposition hearing).

Five months later, the State filed a "Motion to Modify Disposition and Commit to [TJJD]," alleging that V.G. violated several of his conditions of probation, namely: V.G. "committed the offense of Fleeing in a Vehicle" in Minnesota (condition one); V.G. failed to avoid persons or places of disreputable or harmful character when he knowingly "got in a vehicle . . . that he knew was stolen" with another juvenile (conditions three and ten); V.G. failed to report to probation as directed and thereafter absconded for two months (condition four); V.G. left the county without receiving the necessary change of residence

---

[2] V.G. shot a household member in the chest at close range with a BB gun. The household member was hospitalized with a punctured lung, and V.G. fled when police were called. A directive to apprehend V.G. was issued the following day on October 30, 2020. V.G. was located and placed into custody on March 20, 2021.

[3] V.G. turned eighteen in February 2022.

or travel permits (condition six); V.G. failed to abide by his curfew restrictions (condition seven); V.G. failed to attend school (condition eight); V.G. failed to obtain or maintain part-time employment (condition nine); V.G. did not provide notice of his change of address or arrest within five days of the occurrence (condition twelve); V.G. failed to complete thirty hours of community service (condition twenty); and V.G. and the persons responsible for him failed to pay the monthly probation fee (condition twenty-three) and the defense counsel reimbursement fee (condition twenty-four).

On November 4, 2021, during the contested modification hearing, V.G.'s juvenile probation officer Sarah Fisher testified that she was first notified that V.G. had absconded when she received an email from C.V.G. after hours on July 26, 2021. The following day, Fisher contacted V.G., who told her that he had been kicked out of his sister's home after being involved in a physical altercation with C.V.G.'s boyfriend.[4] V.G. agreed to report to Fisher's office on July 28 but declined to disclose his whereabouts. V.G. failed to appear for his scheduled appointment. On September 24, 2021, Fisher was notified by local law enforcement that V.G. was being held in a detention center in Minnesota. Fisher further testified that V.G. did not complete his court-ordered community service hours, was delinquent in fees, and failed to obtain part-time employment or remain enrolled in school.

The trial court found that V.G. violated conditions four, six, seven, eight, and twelve of his probation, and the disposition hearing followed.

---

[4] Austin Police Department Officer Nick Recalde testified that he responded to the altercation involving V.G. and C.V.G.'s boyfriend. Although C.V.G. maintained "it was just a—a verbal altercation," Recalde observed injuries on V.G. consistent with a physical altercation. V.G. had scratches on his face and body.

Nicholas Winowsky, program director of a workforce and General Educational Development (GED) program that V.G. was enrolled in from "around mid-June" until he absconded in July, described V.G. as "very engaged," "respectful," and "very dedicated to his studies."

Cinda Dixon, director of case management at Rockdale Academy, a residential treatment center for adjudicated youths between ten and seventeen years old, spoke about the center's various programs. Dixon testified that most youths take "at least six months" to complete a program at Rockdale Academy, depending on the complexity of their needs. Dixon stated that the center also provides a 90-day treatment plan for eligible youths "who do[ no]t have severe mental health needs"[5] or who have not "been in trouble a whole lot."

Fisher testified that it was the probation department's recommendation that V.G. be committed to TJJD because successful rehabilitation elsewhere would be unlikely given the level of treatment V.G. required and the existing time constraints. Fisher further testified that V.G. was evaluated by a psychologist who also recommended that V.G. receive inpatient treatment. According to Fisher, V.G. last "consistently" attended school when he was in the fifth grade, V.G. struggles with substance abuse issues, and he has yet to receive services for his "anger issues." Fisher explained that any inpatient treatment program outside of a TJJD commitment "would have to end by his [eighteenth] birthday,"

---

[5] V.G.'s counsel asked the trial court to take judicial notice of V.G.'s 24-page psychological evaluation, which indicated that V.G. possessed a low IQ of 67. *See generally Stevenson v. State*, 73 S.W.3d 914, 917 (Tex. Crim. App. 2002) (concluding evidence was insufficient to support appellant's claim of mental retardation where his IQ was 68 because "[a] low IQ score by itself, however, does not support a finding of mental retardation").

which, at that point, was three months away. Whereas V.G. could remain at TJJD until his nineteenth birthday, and while committed, he would receive treatment to "successfully set him up in the long term." Fisher additionally testified that placement with a family member would be inappropriate or unfeasible; V.G.'s sister no longer wanted him in her home, and placement with V.G.'s mother was not recommended because she had "allowed him to leave at the age of 12 because he wanted to go live with his 16-year-old girlfriend."

The trial court ordered V.G. to be committed to TJJD. In concluding that commitment was appropriate, the trial court made several written findings, including: V.G. "is in need of rehabilitation"; it is in V.G.'s "best interests to be placed outside [his] home"; "reasonable efforts were made to prevent or eliminate the need for [V.G.'s] removal from the home"; V.G. "cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation" in his home; V.G. "has a history of aggressive behavior"; V.G. "has a history of persistent delinquent behavior"; and "[l]ocal resources . . . are inadequate to properly rehabilitate [V.G.]"

This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, V.G. argues the trial court abused its discretion in committing him to TJJD because its findings were not supported by legally sufficient evidence.

## A.    Standard of Review and Applicable Law

All proceedings in cases involving the delinquent conduct of children are governed by Title 3 of the Texas Family Code. TEX. FAM. CODE ANN. §§ 51.01–61.107. Under the

5

code, hearings to modify the disposition of a juvenile are divided into two distinct phases. *Id.* § 54.05(e). First, the trial court determines whether there is a reason for modifying the previous disposition; only if the trial court finds in the affirmative will it thereafter determine what necessary modifications are appropriate. *Id.* A trial court may modify the disposition to commit a juvenile to TJJD when, as here, a juvenile's prior disposition is based on a finding that the juvenile engaged in a felony offense, and the trial court "finds by a preponderance of the evidence that the [juvenile] violated a reasonable and lawful order of the court." *Id.* § 54.05(f). The trial court is additionally required to make the following determinations when ordering commitment or placement outside of the home:

(A)     it is in the child's best interests to be placed outside the child's home;

(B)     reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C)     the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation; . . .

*Id.* § 54.05(m)(1)(A)–(C). The trial court, in rendering its decision, may consider "written reports from probation officers, professional court employees, . . . or professional consultants in addition to the testimony of other witnesses." *Id.* § 54.05(e).

We will not disturb the trial court's disposition or modification of a disposition absent an abuse of discretion. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *In re E.K.G.*, 487 S.W.3d 670, 673 (Tex. App.—San Antonio 2016, no pet.). A trial court abuses its discretion "when it acts unreasonably or arbitrarily without reference to guiding rules or principles." *In re V.L.T.*, 570 S.W.3d 867, 869 (Tex. App.—El Paso 2018, no pet.); *In re*

6

*J.M., III*, 133 S.W.3d 721, 724 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). "We view the evidence in the light most favorable to the fact finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not." *Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018).

**B.     Analysis**

V.G. concedes on appeal that he violated several conditions of his probation. *See* TEX. FAM. CODE ANN. § 54.05(e), (f); *see generally In re W.B.G.*, 598 S.W.3d 367, 372 (Tex. App.—Texarkana 2020, no pet.) ("[A] single violation of the conditions of the juvenile's probation is sufficient to support a trial court's order modifying a juvenile's disposition."). Therefore, our analysis begins with the second phase of the proceedings, during which V.G. asserts that the trial court abused its discretion in committing him to TJJD because its findings are not supported by legally sufficient evidence.

Absent from V.G.'s brief, however, is a discussion of the statutory factors the trial court was obligated to consider prior to commitment: whether placement outside V.G.'s home "is in [his] best interests"; whether "reasonable efforts were made to prevent or eliminate the need for [V.G.'s] removal from [V.G.'s] home and to make it possible for [V.G.] to return home"; and whether V.G., in his home, "cannot be provided the quality of care and level of support and supervision that [he] needs to meet the conditions of probation." *See* TEX. FAM. CODE ANN. § 54.05(m)(1)(A)–(C). Even construing V.G.'s brief as one which circuitously addresses the foregoing factors, evidence in the record— including V.G.'s concessions on appeal—supports the trial court's commitment finding.

V.G. does not dispute that he has substance abuse and anger management issues, that he failed to complete any services made available to him while on probation because he absconded, or that he lacked the requisite support at home to be successful on probation. *See In re W.B.G.*, 598 S.W.3d at 373 ("Failure to complete a local treatment program successfully supports a finding that TJJD may be more appropriate than placing a juvenile into another local treatment program."); *see, e.g.*, *In re H.C.*, 562 S.W.3d 30, 47–48 (Tex. App.—Texarkana 2018, no pet.) (concluding the trial court did not abuse its discretion in committing H.C. to TJJD where "H.C. was on probation for only three weeks before being placed in detention, [and] in that time, she demonstrated her ability and inclination to undermine [parental] supervision and the conditions of probation by appearing to take her medication, then spitting it out"); *see also In re C.C.*, No. 02-17-00216-CV, 2018 WL 1865804, at *4 (Tex. App.—Fort Worth Apr. 19, 2018, no pet.) (mem. op.) (concluding the same "[i]n light of the evidence of C.C.'s aggressive behavior, problems with authority, and failures to comply with rules, as well his parents' inability to provide the necessary disciplinary structure for C.C.").

V.G. further agrees that he has unresolved trauma and would benefit from inpatient treatment "tailored to meet his lower intelligence quota and cognitive delays." Although Fisher opined that a 90-day treatment program would be too short to adequately rehabilitate V.G. given his various needs, V.G. maintains "there was no evidence adduced to show that [TJJD] would be a better placement for appellant than the Rockdale Academy." *See In re V.L.T.*, 570 S.W.3d at 869 (concluding the trial court does not abuse its discretion "by basing a decision on conflicting evidence"). In fact, V.G.'s entire

argument on appeal is that there existed a better in-patient placement than TJJD, and therefore, the trial court abused its discretion in failing to consider the alternative. Fatal to V.G.'s assertion, however, is that it is well-established that the trial court need not consider alternative placements out of the home prior to committing a juvenile to TJJD in a modification proceeding. *See In re J.P.*, 136 S.W.3d at 632–33; *see also In re G.B.*, No. 13-19-00581-CV, 2021 WL 3085990, at *2 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, no pet.) (mem. op.) ("Under [§ 54.05], the trial court is not required to exhaust all possible alternatives to commitment before it modifies a disposition and commits a juvenile to TJJD."); *In re J.Y.*, No. 02-17-00092-CV, 2017 WL 3298301, at *3 (Tex. App.— Fort Worth Aug. 3, 2017, no pet.) (mem. op.) (concluding TJJD commitment appropriate although the evidence revealed there was a less restrictive, inpatient placement option because "a trial court need not consider alternative dispositions" in a modification hearing). A trial court may, as it did here, "decline third and fourth chances to a juvenile who has abused a second one"—the second chance being the juvenile's initial placement on probation. *See In re J.P.*, 136 S.W.3d at 633; *see, e.g.*, *In re V.L.T.*, 570 S.W.3d at 873 (concluding the trial court did not abuse its discretion in committing juvenile to TJJD where "V.L.T.'s brief admits the need for treatment for his [post-traumatic stress disorder]," "[t]he probation officer testified that the best alternative for obtaining counseling was through the commitment to TJJD," and although there was also "testimony about the alternative programs," they were not recommended "due either to the eligibility criteria[] or the time needed to complete the programs"); *In re A.T.M.*, 281 S.W.3d 67, 72–73 (Tex. App.—El Paso 2008, no pet.) (concluding the same where the department declined to

9

recommend an alternative program "because it was to[o] close to [the juvenile's] eighteenth birthday, which would limit his time in the program").

Viewing the evidence through the applicable standard of review, we conclude the evidence is legally sufficient to support the trial court's § 54.05 findings. *See In re J.P.*, 136 S.W.3d at 632. Accordingly, the trial court did not abuse its discretion by modifying V.G.'s probation and ordering V.G.'s commitment to TJJD. We overrule V.G.'s first issue.

### III.    JUDGMENT MODIFICATION

By his second issue, V.G. argues the judgment of delinquency and order of commitment mistakenly recites findings contrary to those found by the trial court at the modification hearing.

"[A]n appellate court has authority to reform a judgment to . . . make the record speak the truth when the matter has been called to its attention by any source." *Guthrie-Nail v. State*, 506 S.W.3d 1, 5 (Tex. Crim. App. 2015) (quoting *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992)); *see, e.g.*, *In re J.K.N.*, 115 S.W.3d 166, 174 (Tex. App.—Fort Worth 2003, no pet.) (modifying the trial court's judgment of delinquency and order of commitment so that it accurately reflects the outcome of the adjudication proceeding where it initially contained mention of inapplicable paragraphs from the State's petition).

Here, the reporter's record indicates that the trial court stated: "The Court finds that [V.G.] has violated condition[s] four, six, seven, eight, and twelve of his probation." The trial court's written judgment specifies that the trial court found V.G. violated conditions four, six through ten, twelve, twenty, twenty-three, and twenty-four. Therefore, we modify

10

the trial court's judgment of delinquency and order of commitment to reflect that only the following conditions were found to have been violated by V.G.: four, six, seven, eight, and twelve. *See* TEX. R. APP. P. 43.2(b); *In re J.K.N.*, 115 S.W.3d at 174; *see also In re E.G.C.*, No. 13-16-00372-CV, 2017 WL 2979896, at *4 (Tex. App.—Corpus Christi–Edinburg July 13, 2017, no pet.) (mem. op.) (modifying the trial court's order imposing a determinate sentence of probation to "make the record speak the truth" and affirming as modified). We sustain V.G.'s second issue.

## IV.     CONCLUSION

We modify the trial court's judgment and affirm as modified.

CLARISSA SILVA
Justice

Delivered and filed on the
21st day of July, 2022.