

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-21-00192-CV |
| | § | Appeal from the |
| IN THE MATTER OF V.F., | § | 65th District Court |
| A JUVENILE. | § | of El Paso County, Texas |
| | § | (TC# 1900883) |
| | § | |

**O P I N I O N**

Appellant, V.F., a juvenile whose conduct the court previously adjudicated as delinquent, urges the trial court abused its discretion when it modified its earlier judgment by committing him to the custody of the Texas Juvenile Justice Department (the TJJD). We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2019, V.F. was referred to the Juvenile Probation Department (the Department) at the age of fourteen for the offenses of possession of two ounces or less of marijuana and tampering with or fabricating evidence. While these charges were pending, V.F. was again referred to the Department, this time for two counts of aggravated assault with a deadly weapon,

a felony offense. *See* TEX.PENAL CODE ANN. § 22.02. V.F. admitted to the two counts of aggravated assault and the two pending offenses were dismissed on March 5, 2020. The juvenile court adjudicated V.F. on the two aggravated assault charges and placed V.F. on supervised probation with an out-of-home placement at the Challenge Academy, which he completed successfully in December 2020.

In January 2021, V.F.'s father reported him to be out of control, having left the home to fight other juveniles who were provoking him on social media. The juvenile court issued a Directive to Apprehend as V.F. had violated the terms of his probation in leaving home unaccompanied by a parent. V.F. turned himself in, tested positive for marijuana, and was again placed at the Challenge Academy. He completed the program again and was released with a GPS monitor in May. On June 6, the police were called to V.F.'s home due to a physical altercation between V.F. and his brother.

The Department recommended terminating probation in August, but the juvenile court did not follow the recommendation. Instead, the court extended V.F.'s probation to give him time to complete his counseling, informing the Department that probation could be terminated once probation was completed. As incentive for V.F. to continue to comply with his probation, on August 9, the court gave V.F. a curfew of 6:00 p.m. The next day, V.F. committed a new offense for possession of less than two ounces of marijuana; violated his probation by skipping school, associating with negative peers, and missing his curfew; and tested positive for marijuana and benzodiazepine. The State moved to modify disposition, alleging commission of a new offense, consumption or possession of controlled substances, and association with prohibited individuals. V.F. admitted to these allegations.

A hearing was held on September 24, 2021, on the modification of disposition. The State introduced several supporting documents, including a modification disposition report, a behavioral health assessment, and a PACT full-screen summary report. According to testimony at the hearing and these reports, as of the date of the modification disposition hearing, V.F. had a total of six referrals to the Department. Two of those were for violations of probation, two were dismissals, and two were adjudications. While on probation, V.F. tested positive for marijuana on February 11, 2021, and August 11, 2021. In the past, he had used liquid THC, cocaine, Lean, ecstasy, Dextromethorphan, and alcohol, but he claimed not to have a substance abuse problem. The modification disposition report indicates the Department attempted to address V.F.'s substance use, anger control issues, poor decision-making skills, and family issues, but their efforts did not have a positive effect. It states V.F. struggles to overcome his problems and uses negative coping skills to adapt. V.F.'s behavioral health assessment evaluated V.F. as being at a high risk for reoffending and a high risk for violence.

At the modification hearing, Sonia Solis, a juvenile probation officer, testified the Department recommended V.F. be committed to the TJJD. Solis said the basis for the recommendation was that V.F. continued to use drugs, associate with negative peers, and did not follow the terms and conditions of his probation. She testified the Department initially wanted to recommend placing V.F. in the Serious Habitual Offender Comprehension Action Program within the TJJD, a zero-tolerance, last-chance probation program, with a suspended sentence. The modification report indicates the staffing committee was not in agreement about that recommendation and they concluded V.F. continued to disregard the terms and conditions of his probation and his parents lack the skills to discipline him. Solis testified V.F. would continue to

receive services after commitment; that he would be evaluated and placed in programs that best suit his rehabilitative needs.

Solis testified V.F. was first referred to the Challenge Academy due to the serious nature of the aggravated assault charges. V.F.'s aggravated assault charges arose from his stabbing of two kids at his high school. V.F. reported during his behavioral assessment he had a history of twenty-thirty fights in his lifetime, two involving knives that resulted in serious injuries to his victims.

Solis further testified V.F. has been diagnosed with mega depressive disorder, conduct disorder, Cannabis disorder, Xanax disorder, and alcohol disorder. Solis testified V.F. had been seeing a counselor, but he missed two sessions. She stated V.F. was truthful and admitted to his past behaviors, and his mother knowingly and willingly participated in the behavioral assessment. The modification disposition report recommended that V.F. be placed in a secure residential treatment facility that would address substance use and therapeutic needs.

Regarding his family life, Solis stated V.F.'s mother made efforts to set V.F. on the right track. Solis stated V.F.'s father would immediately call law enforcement and probation and his mother said the father no longer lived in the home. V.F.'s mother testified at the modification hearing that she had been too lenient with V.F. in the past but now that she was working from home, she could supervise V.F. more. She testified she was unaware he had been selling drugs and stealing. The modification disposition report stated the Department believed V.F.'s parents contributed to his delinquency.

In comments to the court at the close of the case, V.F. stated he regretted his decisions in the past and he had become a better person through the Challenge program. He said he was disappointed in himself, and he planned on getting his GED and working.

After the testimony, the court followed the State's recommendation that V.F. be committed to the TJJD. This appeal followed.

## II.    DISCUSSION

In his sole issue, V.F. claims the trial court abused its discretion when it found it was in V.F.'s best interest to commit him to the TJJD. We disagree.

### *Standard of Review and Applicable Law*

We review a juvenile court's modification of an earlier disposition order for an abuse of discretion. *See In re V.L.T.*, 570 S.W.3d 867, 869 (Tex.App.—El Paso 2018, no pet.). A juvenile court has broad discretion in determining a suitable disposition for a child who has been adjudicated as having engaged in delinquent behavior, but it abuses that discretion "when it acts unreasonably or arbitrarily without reference to any guiding rules or principles." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

A juvenile court's determination whether to modify a disposition order is guided by section 54.05 of the Texas Family Code. *Id.* When the disposition to be modified was based on a felony offense, the disposition may be modified to commit the child to the TJJD if the court determines by a preponderance of the evidence the juvenile violated a reasonable and lawful order of the court. *Id.*; *see* TEX. FAM. CODE ANN. § 54.05(f). In modifying a disposition order by committing the child to the TJJD, the court must determine and include it its order that (1) placing the child outside the child's home is in the child's best interests; (2) reasonable efforts were made to avoid removal from the home and to make it possible to return; and (3) the quality of care and level of support and supervision the child needs to be able to meet the conditions of probation cannot be provided to the child in the child's home. *See In re V.L.T.*, 570 S.W.3d at 869; TEX.FAM.CODE ANN. § 54.05(m).

5

Our review follows a two-pronged analysis: "(1) was there sufficient information upon which to exercise discretion, and (2) did the juvenile court err in its application of discretion?" *In re V.L.T.*, 570 S.W.3d at 869. We review the evidence supporting the juvenile court's findings under the civil sufficiency of the evidence standards. *Id*. In determining whether there was legally sufficient evidence to support a finding, "we consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005)). After considering all the evidence in the record, we will set aside a finding only if we determine "the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, as to be manifestly wrong." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

### *Analysis*

V.F. argues the trial court erred in determining it was in his best interest to commit him to the custody of the TJJD. We must conclude, then, whether there was sufficient evidence to support the court's exercise of discretion in doing so. *See In re V.L.T.*, 570 S.W.3d at 869.

The uncontradicted modification testimony established V.F.'s parents have not been able to provide the structure or discipline to help V.F. succeed while on probation. Ms. Solis testified his father resorts to calling the authorities rather than being able to discipline V.F. himself, and V.F.'s mother admitted she had been too lenient and had not been aware of V.F.'s criminal behavior. The trial court commented that V.F. "[does] well when [he's] in a structured environment," and that he's not a bad kid, but his circumstances and bad decisions led to this outcome.

6

The evidence before the court demonstrated V.F. was able to successfully complete the out-of-home placement at the Challenge Academy, twice, but upon release home to his mother, each time, he promptly violated his probation. Within a month after his first release, he was using marijuana and fighting again. After his second release, he soon was fighting at home, he continued to use marijuana, and he violated his probation again by hanging out with negative peers, skipping school, and missing his curfew. When a juvenile originally committed a felony and subsequently violates one or more conditions of probation, section 54.05 allows a trial court to decline third and fourth chances to a juvenile who has abused a second one. *In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004).

The record before the trial court demonstrated the juvenile probation department initially recommended giving V.F. a last-chance attempt at probation, but they determined his continued drug use, association with negative peers, and violation of probation weighed against that option. V.F.'s successful completions of the program at the Challenge Academy indicate he is capable of making positive changes, but his continued probation violations upon release demonstrate he has not yet learned how to consistently make decisions that are in his best interest on his own.

Finally, in matters under other parts of the Family Code, the best interests of children are often paramount, but in matters under the Juvenile Justice Code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety. *Matter of R.S.*, No. 02-22-00165-CV, 2022 WL 17494602, at *3 n.4 (Tex.App.— Fort Worth Dec. 8, 2022, no pet. h.)(mem. op.)(citing *In re J.P.*, 136 S.W.3d at 633). Here, the evidence shows V.F.'s original offenses of aggravated assault caused serious injury to two of his fellow high school students. Despite being on probation for those assaults, V.F. continued fighting. Within a month after being released from the Challenge Academy the first time, V.F. violated his

probation by fighting in a park over provocation on social media. Within a month after being released from the Challenge Academy the second time, the authorities were called because V.F. was fighting at home. This evidence of continued violence is evidence of threats to public safety and support the trial court's finding that V.F. may be dangerous to himself or may threaten the safety of the public if released.

The record before us indicates the trial court considered all these factors in determining V.F.'s disposition should be modified to commit him to the TJJD. This evidence provided sufficient information upon which the trial court determined commitment to be in V.F.'s best interest, and it did not abuse its discretion in doing so.

## III.    CONCLUSION

Having determined that the evidence before the trial court supported its finding that committing V.F. to the custody of the Texas Juvenile Justice Department is in his best interest, we affirm the trial court's modification order.


YVONNE T. RODRIGUEZ, Chief Justice

January 4, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

8